Xtra, Inc. *vs.* Commissioner of Revenue.

Suffolk.  December 3, 1979. — April 1, 1980.

Present: Hennessey, C.J., Quirico, Wilkins, Liacos, & Abrams, JJ.

*Taxation,* Corporate excise tax. *Statute,* Construction. *Administrative
Law,* Agency's interpretation of statute. *Words,* "Liabilities."

A corporation which takes accelerated depreciation on personal property
in computing its income tax liability may treat the income taxes de-
ferred thereby as a liability under G. L. c. 63, § 30 (8).  [277-278]

Appeal from a decision of the Appellate Tax Board.

*Thomas Miller,* Assistant Attorney General, for the Com-
missioner of Revenue.

*David S. Davenport (R. K. Gad, III,* with him) for the
taxpayer.

Quirico, J.  The Commissioner of Revenue (Commis-
sioner) here appeals from a decision by the Appellate Tax
Board (board) in favor of Xtra, Inc.,[1] a Massachusetts cor-
poration engaged in the leasing of certain transportation
equipment.  Xtra takes accelerated depreciation on per-
sonal property in computing its Federal and State income
tax liability, but uses straight line depreciation in compiling
its corporate financial statements.  The single issue this case
presents is whether the board committed legal error in
deciding that, when computing its liability for Massachu-
setts corporate excise, under G. L. c. 63, § 32 (*a*) (1) (ii),
Xtra may include its future obligation to pay the income tax
it has "deferred" through accelerating its depreciation
deductions as a "liability" under G. L. c. 63, § 30 (8).  If

---

[1] Subsequent to the events giving rise to this appeal, Xtra, Inc., was
merged into a new corporation, Xtra Corp., which is its present successor
in interest.  We treat the two corporations as the same for purposes of this
opinion and refer to them as "Xtra."

allowed to do so, Xtra would thereby decrease its net worth and thus also reduce the amount of Massachusetts corporate excise it must pay. In our opinion the holding of the board that under the statutory scheme a corporation which takes accelerated depreciation may treat the income taxes deferred thereby as a liability under c. 63, § 30 (8), is correct, and we therefore hold that this decision should be affirmed.

Xtra is a Massachusetts business corporation engaged in the business of owning, leasing or holding for lease intermodal transportation equipment such as semi-trailers and detachable containers, and chassis used for port movement and local delivery of containers (collectively, "the equipment"). In its corporate income tax returns Xtra reflected a deduction for the depreciation of the equipment, using an accelerated depreciation method as is permissible under the Internal Revenue Code, 26 U.S.C. § 167, and Massachusetts income tax laws, G. L. c. 63, § 30 (5) (*b*). This resulted in Xtra's deducting from income greater amounts for depreciation during the early years of the useful life of each item of equipment, and lesser amounts during the later years, than would be the case had Xtra used the "straight-line" method of depreciation. On its corporate financial statements, however, Xtra made use of the straight line method. To indicate that income taxes in later years would be higher than would be expected with the use of straight-line depreciation, by virtue of taking more of the depreciation deduction in earlier years, Xtra included on its balance sheet an item entitled, "deferred federal and state income taxes." This treatment of the item was in accordance with the generally accepted principles of the accounting profession for the preparation of financial statements.

Xtra timely filed Massachusetts corporate excise returns for its taxable years which ended September 30, 1969, and September 30, 1970. Part of its corporate excise liability was to be measured by its net worth, as defined by G. L. c. 63, § 30 (8). In preparing its returns Xtra again included in its balance sheet a liability item for the deferred Federal and State income taxes. This item reduced Xtra's net

worth, and accordingly, the amount of its corporate excise based thereon. The Commissioner[2] denied the use of this item in determining Xtra's corporate excise liability for the two years, and assessed additional taxes due for each of the years.

Xtra filed appeals through the formal procedure to the board. The parties filed a statement of agreed facts, in which they stipulated the amount of tax which would be due, depending on whether or not the contested liability items were allowed. The board issued an order adopting the position of Xtra, and requesting that pursuant to Rule 33 of the Rules of Practice and Procedure of the Appellate Tax Board (1972) the parties file further computations as to the amount of the abatements due. A final decision in favor of Xtra was filed by the board on April 21, 1977. On April 25, 1977, the Commissioner requested findings of fact from the board, pursuant to G. L. c. 58A, § 13, and Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board (1972). On February 27, 1979, the board issued such further findings of fact and an opinion. The Commissioner then appealed to this court under G. L. c. 58A, § 13.

Xtra's corporate excise was assessed pursuant to G. L. c. 63, § 32, and is measured in part by the taxpayer's "net worth." G. L. c. 63, § 32 (*a*) (1) (ii). The term "net worth" is defined at c. 63, § 30 (8), as amended by St. 1964, c. 375, § 1, which provides in part: "The net worth of a domestic business corporation taxable under clause (1) of subsection (*a*) of section thirty-two shall be [a] portion of the book value of its total assets on the last day of the taxable year, less the sum of (1) its *liabilities* on said date, (2) the book value of its tangible property . . . and (3) the book value on said date of its investment in subsidiary corporations . . ." (emphasis supplied).[3] The term "liabilities" as it appears in § 30 (8) is nowhere defined by statute.

---

[2] In referring to the Commissioner, we include her predecessors, the Commissioner of Corporations and Taxation and the State Tax Commission. See *W.R. Grace & Co.* v. *Commissioner of Revenue*, 378 Mass. 577, 578 n.2 (1979); St. 1978, c. 514, § 278.

[3] The section continues in part: "In determining the book value of any asset, the commissioner may disallow any reserve, in whole or in part,

The Commissioner argued before the board that the usual and ordinary meaning of the term "liabilities" plainly excludes the liability item claimed by Xtra, and cited certain dictionary definitions. The board in its decision noted that the Commissioner "places great weight on the argument that in order for an item to be denominated a 'liability,' there must be something akin to a debtor/creditor relationship, e.g., a debt due such as arises where money is owed for goods or services rendered," which did not exist in the present situation. The Commissioner before this court reiterates her argument that since the deferred taxes in question were not due until a time after the close of the taxable year, no current liability existed. However, the Commissioner acknowledges that this court has found the term "liabilities" to include more than the narrow field of debts presently owed, and agreed at oral argument that it could include contingent liabilities. As we stated in *Boston Elevated Ry. v. Metropolitan Transit Auth.*, 323 Mass. 562, 568 (1949), "'[l]iabilities' is a term of 'large significance,' and is technically more inclusive [than debts]. . . . It has been held in some circumstances to include taxes. . . . The word undoubtedly may comprise contingent obligations" (citations omitted). The board properly rejected the Commissioner's definition and rather looked to history of the statute of which the term is a part to ascertain its proper meaning. The board found that the present corporation excise structure evolved as a result of dissatisfaction with problems of valuation in the prior tax structure, which used the concept of "corporate excess." It found that in creating a more simple, equitable, and speedily computed tax, the Legislature generally chose "the liberal use" of "accounting or bookkeeping concepts," concepts which corporations themselves use to measure their value on their books or in paying their

established with respect thereto which, in his judgment, is not reasonable and proper." In light of our affirmance, below, of the decision of the board, we do not address Xtra's alternative contention that the "deferred income taxes" item constituted a reserve which was reasonable and proper.

income taxes. The board found that the purpose of the Legislature in this change was to create a more favorable climate for business in Massachusetts than had existed before by virtue of a less workable tax standard, and found that the term "liabilities" should be interpreted to achieve a result consistent with that legislative purpose. See *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n*, 371 Mass. 318, 321 (1976), and cases cited. The board found the treatment of the deferred taxes item as a liability was "eminently fair and reasonable," consistent with the literal meaning of the statute, and in keeping with "the clear intent of the Legislature."

The Commissioner argues that the board's reasoning is legally erroneous because it supposedly indicates that the board felt bound by the interpretation given to accounting terms by the accounting profession, contrary to what this court stated in *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 483 (1977), aff'd, 437 U.S. 255 (1978). However, the board in its decision cited the *First Fed.* case, and expressly stated that a generally accepted accounting principle, "of itself, and standing alone, cannot necessarily dictate the result in tax cases." Rather, the board "was influenced by the underlying reason and basis for the accounting principle, namely, 'the matching of cost and revenue in regard to depreciation' . . . ." In this there was no error of law requiring reversal. While the board may have painted the legislative purpose with an unduly broad brush to the extent that it implied that every question of statutory interpretation must be resolved in favor of a corporate taxpayer in order for that purpose to be fulfilled, such dictum in the board's opinion does not render its result erroneous. Moreover, the board correctly applied the principle that ambiguities in taxing statutes are to be resolved in favor of the taxpayer, citing *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 85 (1946), among other cases.

The Commissioner argues that, assuming the term "liabilities" is open to different interpretations, her administra-

tive interpretation of the statutory term is entitled to great weight.  For this proposition she cites *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination,* 378 Mass. 160, 169-170 (1978), and *Ace Heating Serv., Inc.* v. *State Tax Comm'n,* 371 Mass. 254, 256 (1976).  The Commissioner contends that special weight should be given her interpretation in this case because she (or her predecessor) participated in drafting the legislation from which the present corporation excise scheme emerged, citing *School Comm. of Springfield* v. *Board of Educ.,* 362 Mass. 417, 441 n.22 (1972).[4]

These arguments fail because, as Xtra rightly points out, in no instance presented to us had the Commissioner publicly adopted the interpretation of the term "liabilities" sought to be applied here to Xtra, prior to her having taken that position in the present litigation.  The Commissioner's adoption of a particular interpretation of the statutory term for the first time in the present case, absent any prior promulgation of such a rule or even any indication that she has applied it to other taxpayers in the more than a decade between passage of the statute and her disallowance of the deductions in this case, does not entitle that interpretation to the "great weight" given to a duly promulgated administrative regulation which lends specificity to a broad statutory scheme, as in *Massachusetts Elec., supra.*  Nor does it constitute the sort of "contemporary administrative construction" which was accorded significance in *Ace Heat-*

---

[4] Where an administrative officer or agency is charged with enforcement of a statutory scheme, and the officer or agency previously has participated in the drafting of legislation which gave rise to the statute being enforced, an interpretation of that statute adopted publicly by the officer or agency in the course of its enforcement duties may be relevant in interpreting the language and purpose of a statutory provision.  *School Comm. of Springfield* v. *Board of Educ.,* 362 Mass. 417, 441 n.22 (1972). Such an interpretation stands on different footing from the individual recollections of legislative intent which we declared to be irrelevant in *McKenney* v. *Commission on Judicial Conduct,* 377 Mass. 790, 799 (1979).  We are not confronted here with a situation where the Commissioner is volunteering an interpretation of the statute based upon her participation in its drafting but unrelated to her enforcement duties.

*ing, supra,* coming as it does long after the term "liabilities" was enacted as part of c. 63, § 30 (8).

While the Commissioner may have participated in the drafting of the corporate excise legislation which ultimately became law, there is no indication that this participation led to the Commissioner's formulating, much less publicly advocating, any position on the issue now in question. See *Securities & Exch. Comm'n* v. *Sloan,* 436 U.S. 103, 120 (1978). Compare *Zuber* v. *Allen,* 396 U.S. 168, 192 (1969). None of the bills or reports introduced in the Legislature by the State Tax Commission in the course of its study and drafting of the present law provides any indication as to the intended meaning of the term "liabilities" as it applies in this case. See 1961 Senate Doc. No. 512; 1962 Senate Doc. No. 785. There is no indication that the present interpretation dates from that time, or that it has been applied thereafter to any case prior to the present one. Compare *School Comm. of Springfield, supra; First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n,* 372 Mass. 478, 485 (1977); *Affiliated Hosps. Center, Inc.* v. *Rate Setting Comm'n,* 7 Mass. App. Ct. 563, 579 (1979). Even if the Commissioner's interpretation were nonetheless entitled to be given any weight by the Appellate Tax Board, we do not conclude that the board therefore committed legal error in holding as it did that this interpretation was outweighed by other considerations. The board is also an "agency charged with administration of the [tax] law," whose interpretation of tax statutes may be given weight by this court. *Henry Perkins Co.* v. *Assessors of Bridgewater,* 377 Mass. 117, 121 (1979).

The Commissioner cites a number of cases from other States which decide whether deductions from a corporation's taxable net worth similar to the "deferred income taxes" item claimed by Xtra are permissible under various taxing statutes different from our own. Those cases which reach the result sought here by the Commissioner involve statutes which more narrowly limit deductions or exemptions from a corporation's taxable worth than does G. L.

c. 63, § 30 (8).[5] Without extended discussion of these cases, see *Franki Foundation Co.* v. *State Tax Comm'n,* 361 Mass. 614, 621 (1972), it is enough to say that the Legislature could have chosen to apply such narrower restrictions to deductions from a corporation's taxable assets, but instead chose the more general concepts of "net worth," computed in part by deducting "liabilities" from "the book value of its total assets." While the reasoning of these cases, and of others cited by the board and by Xtra,[6] raises interesting questions concerning the application of financial accounting concepts and income tax deductions to the area of corporation excise taxation, these questions are not presently before us. See *First Data Corp.* v. *State Tax Comm'n,* 371 Mass. 444, 448 (1976).

Finding no error of law in the decision of the Appellate Tax Board, we affirm that decision.

*So ordered.*

---

[5] See, e.g., *McLouth Steel Corp.* v. *Corporation & Sec. Comm'n,* 372 Mich. 76 (1963) (affirmance by evenly split court of trial judge's application of statute defining "surplus" in part as "the net value of the corporation's property, less its outstanding indebtedness and paid-up capital . . . ," a result later affirmed by *Brunswick Corp.* v. *State,* 386 Mich. 435 [1971]); *Trunkline Gas Co.* v. *Mississippi State Tax Comm.,* 238 Miss. 591 (1960) (applying Miss. Code 1942, §§ 9314, 9317, which state that in computing capital, surplus, and undivided profits for franchise tax purposes, there shall be included all true reserves other than those for "definite known fixed liabilities which do not enhance the value of assets"); *Kroger Co.* v. *Bowers,* 3 Ohio St. 2d 76 (1965) (applying Ohio Rev. Code Ann. § 5733.05, which expressly includes as a part of the total value upon which the State corporation franchise tax is imposed, "reserves, but exclusive of: (A) reserves for accounts receivable, depreciation, depletion and any other valuation . . .;" and (B) tax due in the current year); *Broadwell Realty Corp.* v. *Coble,* 291 N.C. 608 (1977) (applying corporation franchise tax exception, G. S. 105-122 (b), for a "definite and accrued legal liability"). See also *Thor Power Tool Co.* v. *Commissioner,* 439 U.S. 522 (1979).

[6] See *American Can Co.* v. *Director of Div. of Taxation,* 87 N.J. Super. 1, petition for certif. denied, 44 N.J. 587 (1965); *Calvert* v. *Houston Lighting & Power Co.,* 369 S.W.2d 502 (Tex. Civ. App. 1963).