OGDEN SUFFOLK DOWNS, INC. *vs.* CITY OF BOSTON.

Suffolk.   April 11, 1984. — May 4, 1984.

Present: BROWN, CUTTER, & SMITH, JJ.

*Interest.   Statute,* Construction.   *Taxation,* Real estate tax: abatement. *Words,* "Filed."

Statute 1980, c. 406, which amended G. L. c. 59, § 69, by increasing from six percent to eight percent per annum the interest required to be paid by a municipality on money reimbursed to a taxpayer following an abatement of property tax, was not applicable to a reimbursement with respect to property tax assessed for the fiscal year beginning July 1, 1978. [102-105]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1982.

The case was heard by *Linscott,* J., on a motion for judgment on the pleadings.

*Anne Hoffman (Alan R. Hoffman* with her) for the taxpayer.

*Daniel F. Cronin,* Special Assistant Corporation Counsel, for the city of Boston.

CUTTER, J.   The Appellate Tax Board (the Board) on October 7, 1980, by decision abated $562,241.71 of the taxes for fiscal year 1979 (July 1, 1978-June 30, 1979), assessed as of January 1, 1978, on the property of Ogden Suffolk Downs, Inc. (the racetrack). On October 13, 1981, the Board ordered the treasurer of Boston to refund the abated amount, "all as provided in" G. L. c. 59, §§ 64, 65, and 69. On May 7, 1982, the city paid to the racetrack $672,553.53 which, in addition to the tax abated, represented interest at *six* percent per annum on the abated tax from the dates of payment to the date of refund.

The racetrack brought this complaint against the city of Boston in the Superior Court to recover an additional two per-

cent of interest which it claims to be due to it by reason of St. 1980, c. 406. The city contends that the 1980 statute does not apply to this refund of taxes assessed as of January 1, 1978. In the Superior Court judgment for the city was entered on the pleadings. The racetrack has appealed.

The racetrack's contention is that, by virtue of the revision of G. L. c. 59, § 69, by St. 1980, c. 406, § 1, it is entitled to interest at the rate of *eight* percent, (instead of six percent) on the abatement ordered by the Board. Section 1 of c. 406 revised § 69 to read, "*Section 69.* A person whose tax has been abated shall, if the tax has been paid, be reimbursed by the town to the amount of the abatement allowed, including all interest and all charges paid therewith . . . with interest on the amount so abated at *eight* per cent from the time of payment or the due date of the tax, whichever is later . . ." (emphasis supplied). The rate of interest allowed prior to the 1980 amendment had been six percent.

The problem now presented is caused by §§ 3 and 4 of c. 406, which read, "SECTION 3. The provisions of section one of this act shall apply only to *abatements filed on or after the effective date of this act. SECTION 4. This act shall take effect as of* July first, nineteen hundred and seventy-nine" (emphasis supplied). These two sections were added, 1980 House Journal (June 18, 1980) at 1226, by amendment to 1980 Senate Bill No. 1726 (as theretofore changed and amended) after the bill had been considered by the Committee on Bills in the Third Reading. No other legislative history has been brought to our attention, although counsel for Boston points out that, in one much more understandable prior amendment of § 69 (St. 1965, c. 597, § 4), it had been provided that the then new version of the statute should "apply to taxes assessed in" 1966 and thereafter, and that in another amendment of § 69 (St. 1976, c. 250, § 6), it had been specified precisely that two sections of the 1976 act should "apply to interest on taxes relative to fiscal years commencing July" 1, 1977, and thereafter.

The meaning to be attached to §§ 3 and 4 of c. 406 is obscure. In tax circles, it would be more usual to describe an

abatement as "made," "granted," or "ordered" rather than to refer to one as "filed," if the words "abatements filed" were intended to refer to the date when the Board decided that the taxpayer was entitled to an abatement. In c. 59, § 64 (as amended through St. 1978, c. 580, § 34), authorizing an abatement by the county commissioners, the term used is "shall make a reasonable abatement." When the Board considers an appeal (after transfer of a case from the county commissioners), § 64 provides that it "may *grant* him such reasonable abatement as justice may require" (emphasis supplied). Chapter 59, § 65, as amended through St. 1975, c. 677, § 2, merely provides that the Board may enter such order "as justice may require," as provided in § 64 with respect to cases removed from the county commissioners. The verb "filed" more naturally would be used with reference to an application for abatement under G. L. c. 59, § 59 (as amended through St. 1978, c. 580, § 33), which provides that a "person upon whom a tax has been assessed . . . on or before October first of the year to which the tax relates" (or "on or before the thirtieth day" after the day when the tax bill was sent, if it was sent after September 1) may "apply in writing to the assessors, on a form approved by the commissioner" for an abatement. Section 59 thus would seem appropriately to require the form to be "filed." See Black's Law Dictionary 566 (Nolan & Connolly, 5th ed. 1979).

The date when the annual property taxing process starts is fixed by G. L. c. 59, § 11 (as amended through St. 1978, c. 62), as January first of the year of assessment. Section 11 provides that "[t]axes on real estate shall be assessed . . . to the person who is the owner on January first." That January first, for taxes for the fiscal year, July 1, 1978, to June 30, 1979, would have been January 1, 1978. This view is reinforced by G. L. c. 59, § 38, as appearing in St. 1979, c. 797, § 15, which provides that the assessors "shall *at the time appointed therefor* make a fair cash valuation" (emphasis supplied) of the real estate subject to taxation. Chapter 59, § 59, viewed in its entirety, suggests that the tax bill based on the valuation made as of the previous January 1 ordinarily would not go out much before the next following September first, that is, in the

present case, September 1, 1978. This would mean that (except in unusual circumstances of very dilatory distribution of tax bills) no applications for abatement of taxes assessed as of January 1, 1978, would be filed later than the end of the calendar year 1978 and certainly not as late as July 1, 1979, the effective date of St. 1980, c. 406, mentioned in § 4 of that statute.[1]

Our duty is to give these somewhat ambiguous words, "abatement filed," in c. 406, § 3, a reasonable construction which will carry out what we perceive to be the legislative intention. See *Massachusetts Commn. Against Discrimination* v. *Liberty Mutual Ins. Co.,* 371 Mass. 186, 190-191 (1976); *School Committee of Greenfield* v. *Greenfield Educ. Assn.,* 385 Mass. 70, 79-80 (1982). Although we recognize the principle that ambiguities in taxing statutes are to be resolved in favor of the taxpayer, *Xtra, Inc.* v. *Commissioner of Revenue,* 380 Mass. 277, 281 (1980), we do not regard that principle as controlling in this case. Sections 3 and 4 of St. 1980, c. 406, impose no tax, but amend the interest provisions of a statute providing for relief from excessive taxation. The imprecise term "abatements filed" in § 3, viewed with the effective date specified in § 4, should be dealt with in a manner which fits appropriately into the general property tax structure. The interpretation for which the city contends does fit into the tax structure in a manner which tends to support only a limited retroactive application of c. 406. See *Kagan* v. *United Vacuum Appliance Corp.,* 357 Mass. 680, 683 (1970); *Goes* v. *Feldman,* 8 Mass. App. Ct. 84, 87-88 (1979). As of the approval of c. 406 on July 8, 1980, abatements by the Board of taxes assessed as of January 1, 1979, were about to begin. Applications for those abatements would have been filed during

---

[1] For the general sequence in Massachusetts of assessment, billing, and applications for abatement, appeal to the Board, and abatements of real estate taxes, as provided in G. L. c. 59, see Barrett & Bailey, Taxation § 1241 (2d ed. 1970 & Supp. 1983), and (subject to more recent developments) the more detailed discussion in Nichols, Taxation in Massachusetts 220-226, 265-269, 303-307, 321-324 (3d ed. 1938, and Pike & Cohen, Annotations, 1962).

the autumn of 1979. It would have been natural in July, 1980, to make the effective date of c. 406 retroactive to July 1, 1979, so that the statute would apply to assessments made as of January 1, 1979, and to applications for abatement filed after the effective date and thus largely to be dealt with after the enactment of the statute. Even as to abatements of 1979 taxes made by assessors, few if any 1979 tax bills would even have gone out to taxpayers before July 1, 1979, and any abatements of 1979 assessments would have been made later. All applicants for abatement of assessments made on January 1, 1979, thus would have the advantage of the eight percent interest rate under c. 406.

The interpretation for which the racetrack contends, on the other hand, would result in the uneven treatment of recipients of abatements of taxes assessed as of January 1, 1978. Those who were diligent and pressed their 1978 cases would have six percent interest on refunds ordered by the assessors or the Board before July 1, 1979. Those (under the racetrack's view) whose refunds were paid after that date would receive eight percent interest on their refunds.

We perceive in c. 406 no specific legislative intention (a) to bring about any disparity of treatment of taxpayers assessed as of January 1, 1978, or (b) to make the eight percent interest rate retroactive[2] to the refund of taxes assessed as of January 1, 1978.

*Judgment affirmed.*

---

[2] To the extent that c. 406 with respect to prejudgment (or predecision) interest made substantive changes in the preexisting law (*Morris* v. *Watsco, Inc.,* 385 Mass. 672, 675-677 [1982]), c. 406 may be regarded as substantive rather than procedural or remedial. See discussion in *Schulhof* v. *Northeast Cellulose, Inc.,* 545 F. Supp. 1200, 1211 (D. Mass. 1982). The principle that "all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication" is pertinent. See *Hein-Werner Corp.* v. *Jackson Indus., Inc.,* 364 Mass. 523, 525 (1974). In that case it was said, "It is only statutes . . . relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively . . . ." The considerations just mentioned appear to be consistent with the conclusion reached in this opinion.