NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-876                                      Appeals Court

GEORGE SCHUSSEL & another[1] vs.  COMMISSIONER OF REVENUE.

No. 13-P-876

Suffolk.     June 4, 2014. - September 30, 2014.

Present:  Graham, Meade, & Fecteau, JJ.

Taxation, Appellate Tax Board:  findings, Income tax, Gross
    income.  Words, "Tax-related."

Appeal from a decision of the Appellate Tax Board.

Francis J. DiMento for the taxpayers.
John M. Stephan, Assistant Attorney General, for
Commissioner of Revenue.

GRAHAM, J.  This is an appeal from an Appellate Tax Board

(board) decision upholding the denial by the Commissioner of

Revenue (commissioner) of a request for an abatement of double

taxes assessed to George and Sandra Schussel (Schussels) for

filing false or fraudulent income tax returns for the calendar

years 1993, 1994, and 1995 (tax years at issue).  The case

---

[1] Sandra Schussel.

presents three issues:  first, whether the board erred as a matter of law in upholding the commissioner's double tax assessment based on the Schussels' false or fraudulent filings; second, whether the Schussels were entitled to amnesty from the double tax assessment; and third, whether the board erred as a matter of law in ruling that the seven-year look-back period for nonfiling taxpayers does not apply to the Schussels.  We affirm.

Background.  The facts are taken from the board's findings of fact and report.  George[2] received his bachelor's degree from the University of California in 1961.  He attended graduate school at Harvard University, where he earned a master's degree and Ph.D. in 1966.  Sandra, who was born and raised in Lynn, attended the Peter Brent Brigham Hospital nursing school in Boston and graduated in 1962.  She practiced as a registered nurse at The Children's Hospital in Boston for six months before leaving to begin work as a flight attendant for American Airlines.

The Schussels met in 1964 and were married the following year.  They lived in Cambridge while George completed his education at Harvard.  After George became employed, the couple relocated several times.  The couple lived in New Jersey when their first daughter was born in 1970.  Later that year, the Schussels moved back to Massachusetts, and George secured a job

---

[2] We use first names to avoid confusion.

at American Mutual Insurance Company.  In 1971, the family moved to Lynnfield.

In 1979, George founded his own company, Digital Consulting, Inc. (DCI), which he incorporated in Massachusetts. DCI organized, promoted, and conducted trade shows and conferences that were designed to teach guests how to utilize the latest technological advancements to solve business and government problems.  The events were held in several major cities in the United States, as well as in foreign countries. During the tax years at issue, George operated DCI from an office in Andover.

George testified to the board that, during the tax years at issue, he spent approximately 70 days a year in Massachusetts, 80 days a year in Florida, 95 days a year traveling for business, and 120 days a year in New Hampshire.  However, he testified at his deposition that he was in Massachusetts for about a third of each year, or nearly 120 days.[3]

On February 26, 2004, George was indicted in the United States District Court for the District of Massachusetts on one

---

[3] Neither version of his testimony established that he spent at least 183 days a year in Massachusetts.  As such, the Schussels could not be deemed Massachusetts residents for tax purposes by virtue of G. L. c. 62, § 1(f).  Therefore, the question of the Schussels' residency for tax purposes turned on whether they were domiciled in Massachusetts during the tax years at issue.  In the proceedings below, they argued that they were not domiciled in Massachusetts.  However, the Schussels have elected not to pursue this argument on appeal.

count of conspiracy and two counts of tax evasion, including that he filed a false and fraudulent income tax return for the tax year 1995. The parties agree that, based on Internal Revenue Service (IRS) letter 692 and form 4549-A,[4] the Schussels' adjusted income was determined to be as follows: $1,661,709 for tax year 1993; $2,354,817 for tax year 1994; and $3,341,868 for tax year 1995. These amounts were known as of January 20, 2009, when form 4549-A was issued. George reported his Federal taxable income to be substantially less than these figures. In one instance, the 1995 Federal return reported income of only $1,030,785, a difference of $2,311,083 from the adjusted income for that year. On January 25, 2007, he was found guilty on all three charges. He served a prison sentence until he was granted a supervised release on February 1, 2011.

Although the Schussels owned and maintained a Massachusetts corporation and a residence in Lynnfield, they failed to file any Massachusetts personal income tax returns, whether resident or nonresident, from 1988 to June, 2007. On May 15, 2007, the commissioner issued a notice of failure to file personal income taxes with the Department of Revenue (department). The notice was sent to the Schussels' attorney tax preparers. Only then did the Schussels file State returns for the tax years at issue.

---

[4] IRS form 4549-A indicates "Income Tax Discrepancy Adjustments."

However, the returns filed with the department were based on the Federal returns, which had been deemed false or fraudulent and led to George's convictions.

On January 20, 2009, the commissioner applied the immediate assessment, double tax assessment, and jeopardy assessment provisions of G. L. c. 62C, §§ 26(d), 28, and 29, respectively. Approximately one month later, the commissioner inadvertently issued a tax amnesty notice to the Schussels. The amnesty notice indicated that if, by a specified date, they paid the full amount of tax and interest assessed under the immediate assessment provision, the commissioner would waive the unpaid penalties and the interest associated with those penalties. The Schussels timely paid the amounts due, and the commissioner waived the penalties and related interest. This waiver saved the Schussels $905,215.32. The amount due, as indicated by the amnesty notice, did not include the double tax assessed under § 28. The commissioner did not waive the double tax assessment.

The Schussels appealed the commissioner's double tax assessment to the board, pursuant to G. L. c. 58A, § 7, and G. L. c. 62C, § 39(c), arguing that the commissioner's refusal to grant an abatement was in error. The board found that the commissioner's application of the double assessment provision in G. L. c. 62C, § 28, was justified by the Schussels' "reckless indifference to the obligation to file accurate taxes."

Discussion. 1. Standard of review. "Findings of the board are final, see G. L. c. 58A, § 13, and will not be disturbed if they are supported by sufficient evidence." General Mills, Inc. v. Commissioner of Rev., 440 Mass. 154, 161 (2003). "Our review of the sufficiency of the evidence is limited to 'whether a contrary conclusion is not merely a possible but a necessary inference from the findings.'" Olympia & York State St. Co. v. Assessors of Boston, 428 Mass. 236, 240 (1998), quoting from Kennametal, Inc. v. Commissioner of Rev., 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998). "If supported by sufficient evidence, we will not reverse a decision of the board unless it is based on an incorrect application of the law." Syms Corp. v. Commissioner of Rev., 436 Mass. 505, 511 (2002). "In reviewing mixed questions of fact and law, the board's expertise in tax matters must be recognized, and its decisions are due 'some deference.'" Koch v. Commissioner of Rev., 416 Mass. 540, 555 (1993), quoting from McCarthy v. Commissioner of Rev., 391 Mass. 630, 632 (1984).

2. Double tax assessment. General Laws c. 62C, § 28, inserted by St. 1976, c. 415, § 22, states, in relevant part,

> "If a person . . . has filed a false or fraudulent return or has filed a return with a willful attempt in any manner to defeat or evade the tax, the commissioner may determine the tax due, according to his best information and belief, and may assess the same at not more than double the amount so determined, which additional tax shall be in addition to the other penalties provided by this chapter."

The board found that the Schussels'

> "intent to evade taxes was evident from the fact that, despite working in Massachusetts for a Massachusetts company, the [Schussels] failed to file any Massachusetts income tax returns, not even nonresident returns, from 1988 until June of 2007, when the [Schussels] finally, upon receipt of the Failure to File Notice, filed returns for the tax years at issue.  When they did file their Massachusetts returns, the [Schussels] first reported income amounts that were determined to be fraudulent in federal court and grossly under-reported the true amount of total income earned by over $5,500,000.00."

The board also determined that the Schussels were Massachusetts residents for tax purposes during the tax years at issue.  From these findings, the board concluded that the commissioner was justified in imposing a double tax assessment because the facts established that the Schussels knowingly filed false or fraudulent returns or intended to evade taxes during the tax years at issue.

On appeal, the Schussels put forth three arguments in support of their position that the evidence does not support the board's finding that they knowingly filed false or fraudulent returns or intended to evade taxes.[5]  They contend, therefore, that upholding the double tax assessment was in error.  We reject each of the Schussels' arguments and conclude that the

---

[5] We note that the Schussels' primary argument below was that the nonresident returns filed were not false or fraudulent because the Schussels had a good faith basis to believe that they were domiciled in New Hampshire during the tax years at issue.  However, the Schussels have abandoned this argument on appeal.  See note 3, infra.

board's affirmation of the commissioner's double tax assessment did not constitute error.

First, they argue that each of the three returns filed with the department carried a rider, which should have precluded a finding that they knowingly filed false or fraudulent returns. The rider indicated that George had been federally indicted for tax evasion, and that the proper amount, characterization, and source of gross income were the subject of a pending appeal.[6]

They assert that the rider was attached to the State tax returns for two reasons: (1) to put the commissioner on notice of the appeal as to gross income, which the Schussels sought to preserve, and (2) to indicate that the income reported on the State tax returns may not be the correct amounts, due to the disputed income figures. The Schussels argue that reporting the lesser, disputed income and attaching the rider was the only way to preserve their right to challenge the findings of their true income. We disagree.

The Schussels underreported their State tax liability in two ways; first, by using the fraudulent Federal return as a

---

[6] The rider stated in full: "Taxpayer is currently a party to a criminal tax case brought by the U.S. Attorney's Office for which the details can be found at United States District Court for the District of Massachusetts, Docket No. 04-10060. Items of gross income determined purusant [sic] to said case are the subject of a pending appeal regarding amount, characterization and source. Income which is the subject of said case/appeal has not been reported on this return due to the uncertainties [sic] described above."

basis to calculate their Massachusetts income, and second, by erroneously filing as nonresidents, which would permit them to pay only a fraction of their true taxable income to the Commonwealth.

The Schussels had a duty to provide a more accurate report of their earned income to the department, particularly after the verdict in the Federal case had been issued. They could have preserved their right to change the amounts entered on the State returns. As the commissioner suggests, the Schussels should have used amounts similar to those found in IRS form 4549-A when filing returns with the department. If those figures were later found to be overstated, resulting in overpayments to the Commonwealth, the Schussels could then submit a request for abatement and the return of their excess payment. This is especially true where the Schussels had already neglected to pay personal income taxes to the Commonwealth for approximately twenty years.

Next, the Schussels argue that where a tax attorney prepares returns on behalf of his clients, which returns he believes to be accurate based on his full knowledge of the relevant facts, then that, together with the explicit disclosure prepared by the tax attorney and appended to the returns, precludes the imposition of penalties based on a failure to disclose. This argument is without merit and does not shield

them from liability. The Schussels rely solely on Scagel v. Commissioner of Rev., 13 Mass. App. Tax Bd. Rep. 38 (1990), to support their proposition.

In Scagel, the board found that the taxpayers specifically disclosed all relevant facts related to their domicile to their accountant and relied on the accountant's advice in filing a nonresident return. Id. at 42. The board ruled that the taxpayers had a good faith basis for filing a nonresident return and, thus, the commissioner failed to meet his burden of proving that they filed a false or fraudulent return. Id. at 48.

Here, the board appropriately rejected the application of Scagel, where it explicitly found that

> "the [Schussels'] failure to file returns and gross
> underreporting of income earned amounted to more than a
> mere act of negligence as in Scagel and instead amounted to
> a reckless indifference to the obligation to file accurate
> taxes which constituted intent to evade taxes as the Board
> found in [Peter Ruggiero, Inc. v. Commissioner of Rev., 18
> Mass. App. Tax Bd. Rep. 19 (1995)]."

We also note that the Schussels were considered Massachusetts residents for tax purposes during the tax years at issue. Therefore, in contrast to Scagel, the Schussels cannot contend that they had a good faith basis for filing nonresident returns. Moreover, their failure to file returns for a period of approximately twenty years and their subsequent underreporting of income cannot be rectified by their alleged reliance on tax preparers.

Finally, the Schussels contend that the board's subsidiary finding that they "grossly under-reported the true amount of total income earned by over $5,500,000.00" was erroneous and unsupported by the record because no taxing authority determined with finality the true amount of income earned during the tax years at issue. However, as we previously concluded, the Schussels should have used figures more closely tied to those found by the IRS in form 4549-A when determining their Massachusetts taxable income. An analysis of the difference between the adjusted income and the total income reported on their returns for the tax years at issue results in the exact amount found to be lacking by the board -- $5,558,736.[7] The board could also rely on the fact that in the Federal case, the jury found, in accordance with the judge's instructions, that there was "a substantial tax due in addition to what was shown to be due on the return."[8] It is important to note that the

---

[7] Pursuant to form 4549-A, the following adjustments were made to the Schussels' income for tax years 1993, 1994, and 1995, respectively: $1,661,709, $2,354,817, and $3,341,868. These amounts total $7,358,394. The total income, as reported by the Schussels on form 1-NR, Massachusetts nonresident income tax return, for 1993, 1994, and 1995 were as follows: $358,880, $383,417, and $1,057,361, respectively. The total income reported equals $1,799,658. Therefore, the difference between the adjusted income and total income reported was in fact $5,558,736.

[8] Although the term "substantial" was not defined by the Federal judge, the board's finding that the Schussels' income was underreported by more than $5 million was supported by the

board is not required to find the exact amount of underreported income before concluding that the Schussels intended to evade taxes by underreporting their income.

We conclude that the board's findings were supported by substantial evidence. Furthermore, the findings provide sufficient support for the board's conclusion that the commissioner did not err in assessing the double tax. Thus, we affirm the board's ruling, where the decision was not arbitrary or capricious, or based on any other error of law, particularly where the board's expertise on tax matters entitles its decisions to some deference. See Koch, 416 Mass. at 555.

3. Application of the amnesty program. In accordance with her authority under St. 2008, c. 461, the commissioner "established a two-month amnesty program commencing on March 1, 2009, and ending on April 30, 2009," DOR Technical Information Release (TIR) 09-3 (February 19, 2009), reprinted in 5 Official MassTax Guide (West 2014). The purpose of the program was to encourage the full payment of delinquent tax obligations to the Commonwealth. The program applied to individuals with existing tax liabilities from tax years ending on or before December 31, 2007. Under the program, the commissioner was authorized to waive all unpaid penalties imposed on a taxpayer for failure to

record. The adjusted income and total income figures in the record provide more than a sufficient basis for the board's finding.

timely file a return, failure to file a proper return, and failure to timely pay a tax liability, so long as the taxpayer paid the full amount of the tax and interest identified by the commissioner. However, "[t]he commissioner's authority to waive penalties during the amnesty period shall not apply to any taxpayer who, before the start date of the amnesty program selected by the commissioner, was the subject of a tax-related criminal investigation or prosecution." St. 2008, c. 461.

The commissioner issued a tax amnesty notice to the Schussels on February 25, 2009, despite the fact that George was subject to a tax-related criminal prosecution in Federal court prior to the start of the amnesty program. The Schussels paid the full amount of tax and interest identified in the tax amnesty notice, which resulted in a waiver of penalties assessed under G. L. c. 62C, § 33. The commissioner later discovered the error, but did not seek to recoup the amount of the penalties, saving the Schussels more than $900,000.

The Schussels also sought amnesty for the double assessment penalties assessed by the commissioner pursuant to G. L. c. 62C, § 28. The commissioner denied their request. Relying on St. 2008, c. 461, and TIR 09-3, the board agreed with the commissioner and concluded that George's Federal conviction for tax evasion made him ineligible for the amnesty program.

The Schussels argue on appeal that the board's ruling was

in error because George's Federal proceedings did not constitute "a tax-related criminal investigation or prosecution" within the meaning of St. 2008, c. 461. Specifically, they argue that the amnesty program only excludes taxpayers under investigation or prosecution by the Commonwealth, not the Federal government.

Chapter 461 of St. 2008 and TIR 09-3 do not provide a definition of "tax-related." "Our duty is to give these somewhat ambiguous words . . . a reasonable construction which will carry out what we perceive to be the legislative intention. Although we recognize the principle that ambiguities in taxing statutes are to be resolved in favor of the taxpayer, we do not regard that principle as controlling in this case." Ogden Suffolk Downs, Inc. v. Boston, 18 Mass. App. Ct. 101, 104 (1984) (citations omitted).

The Schussels suggest that "tax-related" refers only to Massachusetts taxes because the main purpose of the exception to the program was to prevent the commissioner's waiver of penalties from compromising any pending or subsequent criminal investigation or prosecution by the Commonwealth. They argue that the exception was put in place to prevent, for example, a situation in which the commissioner waives the penalties assessed against a taxpayer that also happens to be the subject of a State criminal investigation or prosecution because the waiver might adversely affect the Commonwealth's investigation.

The Schussels argue further that the Legislature's use of the word "tax" throughout the tax statutes refers only to Massachusetts taxes, and that there is no good reason to apply the term more broadly in this context.

The commissioner asserts that "tax-related," as it applies to the amnesty program, was meant to include those investigations and prosecutions at both the State and Federal levels. The board implicitly upheld the commissioner's interpretation by concluding that the Schussels did not qualify for amnesty under this exception.

"Tax," as defined by G. L. c. 62C, § 1, inserted by St. 1976, c. 415, § 22, means "any tax, excise, interest, penalty, or addition to tax imposed by this chapter or the statutes referred to in section two." General Laws c. 62C, § 2, inserted by St. 1976, c. 415, § 22, states that "[t]he provisions of this chapter shall . . . apply to the taxes imposed by chapter sixty A; by chapters sixty-two through sixty-five C, inclusive; by section ten of chapter one hundred and twenty-one A; by section twenty-one of chapter one hundred and thirty-eight; and by any act in addition thereto or amendment thereof."

The literal interpretation of the term supports the position of the commissioner and the board; "tax-related" literally means of or relating to tax, which is quite broad. Moreover, the commissioner is vested with the sole discretion to

determine the scope of the amnesty program.[9]  The board's conclusion that the commissioner's interpretation was consistent with St. 2008, c. 461, and TIR 09-3 was not error.  See Koch, 416 Mass. at 555, quoting from McCarthy v. Commissioner of Rev., 391 Mass. at 632 (board entitled to "some deference").  See also Xtra, Inc. v. Commissioner of Rev., 380 Mass. 277, 281 (1980) (no reversible error where board construes legislative purpose broadly).

We adopt the commissioner's definition of "tax-related."  This construction of the amnesty exception serves a dual purpose.  First, it prevents the commissioner from compromising pending or subsequent criminal investigations or prosecutions by the Commonwealth, as the Schussels suggest.  Second, it precludes those taxpayers who are under Federal investigation or prosecution from potentially defrauding the Commonwealth in a derivative manner, described below.

Massachusetts taxpayers use the gross income reported on their Federal tax returns as a basis to determine and report their Massachusetts taxable income.  See G. L. c. 62, §§ 2, 6F.  As such, if a taxpayer files a false or fraudulent Federal return, or underreports earned income, the error or fraud may

---

[9] "Chapter 461 of the Acts of 2008 provides that the Commissioner of Revenue shall establish a two-month amnesty program during the fiscal year ending June 30, 2009 (the 'Amnesty Program') and determine the scope thereof."  TIR 09-3.

pass through to the corresponding State return. The end result would be that the Commonwealth would collect less taxes than were actually owed. We cannot conclude that the Legislature or the department desired to leave open the possibility that amnesty would be given to a taxpayer subject to a tax-related Federal investigation or prosecution where those proceedings may also reveal a false or fraudulent State tax return. To the contrary, we have no doubt that the Legislature and department would seek to preclude such a result by also prohibiting the commissioner from waiving penalties against taxpayers that are the subject of a Federal tax investigation or prosecution.

Furthermore, this construction of the disputed language is more consistent with the purposes of the tax statutes and the department's policies -- that amnesty should not be available to those taxpayers that defraud the Commonwealth and that it is to be given only in exchange for payment of all outstanding taxes and interest owed to the Commonwealth. Were we to adopt the Schussels' position, amnesty might be given in exchange for less, where the taxpayer's Massachusetts tax liability may have been underreported. See Bolster v. Commissioner of Taxn., 319 Mass. 81, 84-85 (1946) ("None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a

whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature").

4. Seven-year look-back period. By statute, the limitations period on the assessment of taxes, interest, and penalties does not begin to run unless the taxpayer files a return. General Laws c. 62C, § 26(d), inserted by St. 1976, c. 415, § 22, provides,

> "In the case of a false or fraudulent return filed with intent to evade a tax or of a failure to file a return, the commissioner may make an assessment at any time, without giving notice of his intention to assess, determining the tax due according to his best information and belief."

However, the commissioner has established a policy of limiting the time after which a nonfiling taxpayer will be assessed to seven years following the failure to file. See TIR 01-8 (June 15, 2001), reprinted in 5 Official MassTax Guide (West 2014).

Here, the most recent tax year at issue, 1995, was more than seven years removed from the date of assessment, but the commissioner declined to apply the seven-year look-back period, which the Schussels claim was error. The board concluded that the commissioner did not err because although more than seven years had passed, the commissioner is authorized to disregard the look-back period under circumstances described in part VI of TIR 01-8. The Schussels argue that the board's ruling was error because "the meager factual basis underpinning the Board's

determination is insufficient to invoke the exceptions" provided in part VI.

Part VI provides, in relevant part,

"In certain instances described below, when a taxpayer has not filed tax returns, and the Commissioner believes that the taxpayer's circumstances do not merit the application of a look-back period of seven years or less, the Commissioner will assess such taxpayer for all taxable periods for which a return is due. In general, a taxpayer will be assessed for all taxable periods for which a return is due in each of the following instances, or in instances involving similarly egregious circumstances:

". . .

"3. a knowing or willful failure to file returns with the intent to avoid the payment of tax;

"4. a willful neglect to file returns despite reasonable cause to know of a filing responsibility."

The board found that the commissioner's records, which are not disputed by the Schussels, indicate that the Schussels "did not file any personal income tax returns with Massachusetts from calendar year 1989 forward, until the Commissioner issued the Notice of Failure to File on May 15, 2007." Furthermore, the Schussels filed tax returns only after George was convicted of Federal tax evasion, and when those returns were filed, the Schussels' income was grossly underreported. The board's findings were supported by ample evidence and, thus, cannot be described as "meager." See General Mills, Inc. v. Commissioner of Rev., 440 Mass. at 161.

The board's decision was not arbitrary or capricious, nor

does it give rise to any other error of law.  Therefore, we uphold the board's ruling that

> "the fact that the [Schussels] owned and were employed by a Massachusetts company gave the [Schussels] 'a reasonable cause to know of a filing responsibility' with respect to, at least, nonresident tax returns.  By failing to file those income tax returns, the [Schussels] displayed at least 'a willful neglect to file returns,' if not 'a knowing or willful failure to file returns with the intent to avoid the payment of tax."

Thus, in accord with TIR 01-8, part VI, the commissioner did not err in disregarding the look-back period and assessing the Schussels accordingly.

<u>Conclusion</u>.  The board's decision, upholding the commissioner's double tax assessment and denial of amnesty for the penalties assessed under G. L. c. 62C, § 28, was supported by the evidence and was not otherwise arbitrary or capricious. Furthermore, the Schussels cannot escape liability on the ground that the seven-year look-back period precluded the commissioner from issuing assessments.  The Schussels' fraud brought them within an exception to the limitation period, allowing the commissioner to disregard the look-back policy.  Thus, we affirm the decision of the Appellate Tax Board.

<u>So ordered</u>.