TAX COLLECTOR OF NORTH READING *vs.* TOWN
OF READING.

Middlesex.    September 19, 1974. — December 3, 1974:

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Taxation,* Personal property tax: exemption; Property devoted to public use; Property of municipality in another municipality. *Municipal Corporations,* Property.

Personal property of the town of Reading located in the town of North Reading and used to supply electricity to North Reading as authorized by St. 1906, c. 369, is not taxable by North Reading [440-441]; the Legislature nowhere has used language indicating the nonapplicability to such property of the principle that property held for, and actually devoted to, a public use by one municipality within the territorial limits of another municipality is not subject to taxation, except where expressly made so by statute [441-444].

CONTRACT. Writ in the Superior Court dated December 19, 1972.

A demurrer was sustained by *Bennett,* J.

*Edward F. Cregg,* Town Counsel (*Anthony G. Prasinos* with him) for the plaintiff.

*Donald L. Connors,* Town Counsel, for the defendant.

_____

[1] Nothing we say is intended to express approval of the drinking of alcoholic beverages during a trial day.

HENNESSEY, J.   In this action in contract pursuant to G. L. c. 60, § 35, the town of North Reading seeks to recover from the defendant town of Reading unpaid personal property taxes for the years 1969-1972. The defendant waived two procedural points originally raised by its demurrer. The Superior Court judge thereafter sustained the defendant's demurrer on the ground that the allegations in the declaration were not sufficient to state a cause of action. The plaintiff in this appeal argues that, as alleged in the declaration, the defendant is obliged by law to pay taxes on its personal property consisting of poles, wires, overhead fixtures, transformers, meters, underground cables, and other equipment used to supply electricity by the town of Reading and located in North Reading. There was no error.

Our decision and reasoning in the case of *Gas & Elec. Commrs. of Middleborough* v. *Assessors of Lakeville,* 355 Mass. 387 (1969), is central to the issues here. In that case we held that personal property owned by one municipality and used to supply electricity to customers in an adjoining municipality is not taxable as personal property by the second municipality. The plaintiff, first of all, seeks to distinguish the *Middleborough* case on the basis that our decision in that case rested on the general statutory scheme set forth in G. L. c. 164 for regulating the distribution and sale of electricity and gas. In contrast, Reading was authorized to sell and distribute electricity in North Reading by special statute, St. 1908, c. 369.[1] The plaintiff points out the specific and differing language used in c. 369 and argues that the *Middleborough* case is not controlling because of the contrasting phraseology of the two statutes.

Specifically the plaintiff relies on the language of c. 369 which provides that the town of Reading may construct and maintain lines and in supplying electric power to North

---

[1] Statute 1908, c. 369, also authorizes Reading to supply electricity to Wilmington and Lynnfield Centre. The plaintiff's analysis would, of course, imply that these towns could also tax the personal property held within their territorial limits.

Reading "shall thereafter have and enjoy the same rights
and franchises respecting such sale and distribution of
electricity for light, heat or power, and the extension of its
plant therefor, *and shall be subject to the same limitations
and obligations in the exercise of such rights and fran-
chises, as if it were a private person, firm or corporation"*
(emphasis supplied). In comparison, G. L. c. 164, § 47
(inserted by St. 1915, c. 191), the controlling statute in *Gas
& Elec. Commrs. of Middleborough* v. *Assessors of Lake-
ville, supra,* provides that a town which has acquired a
municipal lighting plant may extend its mains or lines into
an adjoining town in order to distribute and sell gas therein
and "shall thereafter have in such adjoining town the same
rights and privileges, and be subject to the same limitations
and obligations, *as it has within its own territorial limits"*[2]
(emphasis supplied).

The plaintiff asserts that this contrast in language
renders the *Middleborough* case inapplicable and argues
that the Legislature in enacting St. 1908, c. 369, intended
that Reading be subject to the obligations of private
persons or corporations including liability to taxation. We
disagree.

We conclude that the doctrine of *Gas & Elec. Commrs. of
Middleborough* v. *Assessors of Lakeville,* 355 Mass. 387
(1969), is applicable to the facts of this case because the
*Middleborough* case was not decided exclusively on the
basis of the language in G. L. c. 164, § 47, providing that a
town supplying gas or electricity to adjoining communities
"shall thereafter have in such adjoining town the same
rights and privileges, and be subject to the same limitations
and obligations, as it has within its own territorial limits."
Our decision primarily rested on a principle we have
reaffirmed repeatedly. That principle is that property held
for public use by one municipality within the territorial
limits of another municipality is not subject to taxation

---

[2] Since a municipality would obviously not tax property owned by it and held
within its territorial limits, § 47 insures the municipality the same immunity in
adjoining communities.

(except where expressly provided by statute) so long as such property is actually devoted to a public use. *Worcester v. Western R.R.* 4 Met. 564 (1842). *Wayland* v. *County Commrs. of Middlesex,* 4 Gray 500 (1855). *Boston* v. *Boston & Albany R.R.* 170 Mass. 95 (1898). *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491 (1906). *Collector of Taxes of Milton* v. *Boston,* 278 Mass. 274 (1932). *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.* 353 Mass. 81 (1967). Moreover, as we reiterated in the *Middleborough* case the exemption of property held for public purposes by one municipality is not founded on an express provision of a statute, but rests on general principles of propriety, justice, and expediency.

The development of electricity for light, heat, and power by a municipality is a public use. *Opinion of the Justices,* 150 Mass. 592 (1890). *Barnes* v. *Peck,* 283 Mass. 618 (1933). *MacRae* v. *Selectmen of Concord,* 296 Mass. 394 (1937). As such, the law with respect to exemption for taxation is governed by a long line of cases, including the *Middleborough* case, which are applicable to the facts of this case even though Reading's authority arises out of St. 1908, c. 369, rather than G. L. c. 164, § 47.

Despite the fact that we have determined that the rationale of the *Middleborough* case is generally apposite to the facts of this case, it remains for us to examine all of the relevant statutes to determine whether the Legislature has expressed an intent that the principles reaffirmed in the *Middleborough* case should not apply to the property involved in this case. From this examination we conclude that the Legislature nowhere has used language indicating that those principles should not apply to the property involved here.

First of all, we consider whether the plaintiff is aided by the provisions of G. L. c. 59, § 2. That statute, as appearing in St. 1954, c. 459, § 1, provides in pertinent part: "All property, real and personal, situated within the commonwealth, and all personal property of the inhabitants of the commonwealth wherever situated, *unless expressly exempt, shall be subject to taxation*" (emphasis added).

That there is no provision in G. L. c. 59, § 2, expressly exempting personal property held by one municipality in the territorial limits of another and used therein for the distribution of electricity is of no assistance to the plaintiff. Property held for a public use by a municipality constitutes a judicially recognized exception to G. L. c. 59, § 2. *Gas & Elec. Commrs. of Middleborough* v. *Assessors of Lakeville, supra,* at 389.

Next, we consider the plaintiff's argument arising out of the fact that the *Middleborough* case involved no express enactment subjecting the property involved to the taxing power. As we stated in *Worcester County* v. *Mayor & Aldermen of Worcester,* 116 Mass. 193, 194 (1874), publicly held property devoted to public uses will not be subject to taxation, "unless it were made so by express enactment or by clear implication." In the *Middleborough* case we found no express enactment nor any clear implication that the exercise of the taxing power was to be allowed.

In this case, however, the plaintiff argues that St. 1908, c. 369, specifically designates Reading as a "private person, firm or corporation." Therefore, the plaintiff submits, Reading is subject to G. L. c. 60, § 35, relating to the collection of taxes "against the person *assessed* for such tax" (emphasis supplied).

While it is debatable whether a town may be properly termed and considered a person (see, e.g., *Donohue* v. *Newburyport,* 211 Mass. 561, 568 [1912]; *Howard* v. *Chicopee,* 299 Mass. 115, 121 [1937]; *Hansen* v. *Commonwealth,* 344 Mass. 214, 219 [1962]), resolution of that issue is not determinative here because c. 369, § 2, expressly provides that Reading "shall thereafter have and enjoy the same rights and franchises ... and shall be subject to the same limitations and obligations *in the exercise of such rights and franchises,* as if it were a private person, firm or corporation" (emphasis supplied). Consequently, the more important question is what is meant by "the exercise of such rights and franchises" and whether liability to taxation is within such exercise.

We, of course, proceed on the assumption that this

language is not superfluous and that the Legislature in including these words acted with serious intent. Since we must assume that the Legislature had a purpose in defining the rights and obligations of the town of Reading in these terms, we seek to ascertain the conceivable purposes underlying this expression.

It may be that the reference to rights and obligations of a private person, firm or corporation is merely a shorthand way used by the Legislature to define general legal obligations relative to the conduct of a municipally owned utility as a commercial business. See, e.g., St. 1898, c. 143. This language could be construed so as to require Reading to render adequate and efficient service impartially and at reasonable and fair rates. Additionally, the purpose and effect of the language may have been directed toward ensuring that Reading be liable for any torts committed in the exercise of its franchises.[3] Thus, the "private person, firm or corporation" language of c. 369 may be simply to establish that Reading in supplying and distributing electricity shall be subject to the same utility franchise rights as a private utility franchise under R. L. (1902) c. 121 and c. 122. In any event, we are not persuaded that this language is sufficient to demonstrate a legislative intent negating the applicability of the long-standing principle that public property devoted to public uses is not subject to taxation unless made so by express enactment.

There is, moreover, no clear implication that the Legislature intended to permit taxation of Reading's property. Where the Legislature intended to provide for the payment of taxes or payments in lieu thereof it has clearly so provided. For example, G. L. c. 164, § 46, provides that where a municipality acquires existing facilities of a gas or light plant in another city, which are presumably already on the tax rolls, the acquiring municipality "shall there-

---

[3] Under G. L. c. 164 municipal tort liability is covered by § 64 which provides that a town owning or operating a gas or electric plant shall be liable for injury or death "in the same manner and to the same extent as a private corporation." This language may be profitably compared with c. 369; it is not unlikely that a similar result was intended.

after have therein the same rights and franchises and be subject to the same limitations and obligations *as the vendor* from whom such outlying plant was purchased would have had or to which he would have been subject had such purchase not been made" (emphasis supplied). Cf. G. L. c. 164, § 47.

Furthermore, it cannot be presumed by the general and indefinite language of c. 369, that the Legislature intended to overturn the long established rule that property held by one municipality within the territorial limits of another is not subject to taxation so long as it is devoted to a public use. Had the Legislature intended to accomplish that result it could have done so by the use of plain and unequivocal language; c. 369 fails to effect that result.

Our decision is strengthened by further examination of the pattern of other statutory enactments, which serve to confirm that the principles of the *Middleborough* case should control here. First of all, we agree with the contentions of the town of North Reading that c. 369 has neither been repealed by nor absorbed in G. L. c. 164.[4] However, we do not agree with the resulting argument of North Reading that the legal obligations of Reading with respect to the distribution of electricity to adjoining towns are not governed by G. L. c. 164 or the cases construing that chapter, including the *Middleborough* case.[5]

---

[4] It is indisputable that c. 369 was not expressly repealed by St. 1914, c. 742, the predecessor to G. L. c. 164. Statute 1914, c. 742, § 199, specifically provides for the repeal of certain statutes but does not include St. 1908, c. 369, therein.

[5] In the interest of clarity the pertinent General Laws and amending statutes are summarized as follows: General Laws c. 164, §§ 1-127, is a codification of the laws that regulate the sale and distribution of gas and electricity. Sections 34-69A specifically cover municipally owned electric companies. The statute that originally enacted the codification was St. 1914, c. 742. Chapter 742 consisted of 200 sections regulating various aspects of the manufacture, transmission, distribution, and sale of gas and electricity. In the subsequent years various amendments to c. 742 were enacted. The amendment pertinent to the issue in this case was effected by St. 1915, c. 191, which added § 47 to G. L. c. 164. As originally enacted, St. 1914, c. 742, contained no section specifically regulating the extension by a municipal lighting plant into adjoining municipalities where there were no existing facilities. Consequently, the next year St. 1915, c. 191, was enacted adding to c. 742 the following section: "1. The board of gas and electric light commissioners may, after notice and a public hearing, authorize a city or town which has acquired a municipal lighting plant to extend its mains or lines into an adjoining city or town for the purpose of distributing and selling gas or

That St. 1914, c. 742, did not expressly repeal c. 369 does not mean that Reading's legal obligations with respect to the sale and distribution of electricity to North Reading shall be determined completely apart from the provisions of G. L. c. 164. This follows for two reasons. First, although there was no express repeal by St. 1914, c. 742, that act in § 200 provides: "The provisions of this act, so far as they are the same as existing statutes, shall be construed as a continuation thereof and not as new enactments, *and a reference in a statute which has not been repealed to provisions of law which have been revised and re-enacted herein shall be construed as applying to such provisions as so incorporated in this act"* (emphasis supplied).

Second, c. 742, § 2, expressly provides in pertinent part: "The provisions of this act shall apply to all gas and electric companies heretofore organized or chartered under any general or special laws applicable thereto, or hereafter organized hereunder." While we realize that St. 1914, c. 742, contained no specific provision regulating the extension by one municipal lighting plant into adjoining communities,[6] we nevertheless conclude that these sections evince the Legislature's intent that regulations governing the distribution and sale of gas and electricity shall be uniformly construed. It would make little sense given the legislative attempt in St. 1914, c. 742, to consolidate and revise these laws to treat municipal lighting plants created by special statute prior to passage of the general law as bodies completely independent and governed by separate legal obligations with respect to taxation not applicable to

electricity therein, if such city or town or a private corporation therein is not at the time supplying such city or town with gas or electricity, as the case may be. Such authorization shall be upon such terms and with such limitations and restrictions as the board may deem to be in the public interest. A city or town so authorized shall thereafter have in such adjoining city or town the same rights and privileges, and be subject to the same limitations and obligations, as it has within its own territorial limits." Statute 1915, c. 191, as amended by St. 1929, c. 379, § 6, is currently codified as G. L. c. 164, §47.

[6] General Laws c. 164, § 47, which covers the subject of a municipality's extension of mains into an adjoining city, which is the case here, was added to G. L. c. 164, not by St. 1914, c. 742, but by St. 1915, c. 191. See fn. 5, *supra,* where St. 1915, c. 191, is set out in full.

municipal lighting plants created after 1914. Of course, separate regulations may, in certain instances, be appropriate because of express provisions of a special statute. However, no such special circumstances appear in c. 369 and no conflict with the language of c. 369 will result if Reading's property used to distribute electricity is determined to be exempt from tax liability.

On the contrary, the exemption from taxation by the adjoining municipality will further the end of uniformity in the regulation of municipal lighting plants, whether expansion took place prior to 1914 or otherwise by special statute.

*Order sustaining demurrer affirmed.*
*Judgment for the defendant.*