428 Mass. 261 (1998)                                    261

Tennessee Gas Pipeline Company *v.* Board of Assessors of Agawam.

TENNESSEE GAS PIPELINE COMPANY *vs.* BOARD OF ASSESSORS
OF AGAWAM.

Suffolk. September 3, 1998. - October 19, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Taxation,* Appellate Tax Board: findings; Real estate tax: abatement, value;
Assessors. *Administrative Law,* Substantial evidence. *Value. Public Utili-
ties,* Value.

Discussion of the methods for determining the fair cash value of utility
property for tax purposes. [262-264]
The Appellate Tax Board erred in determining that net book value or the unit
method of valuation was not applicable in determining the fair cash value
of property owned and used by a utility, and no substantial evidence sup-
ported the board's conclusion that the property should be valued without
regard to encumbrances on the land imposed by government regulations:
the matter was remanded for a redetermination of the fair cash value.
[265-267]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct
appellate review.

*Philip Burling (Barbara A. Fiacco* with him) for the plaintiff.
*Thomas S. Locke,* Town Counsel, for the defendant.

ABRAMS, J. The plaintiff, Tennessee Gas Pipeline Company
(taxpayer), appealed from a decision of the Appellate Tax Board
(board) denying its applications for abatement of the real estate
taxes assessed by the Agawam board of assessors (assessors) on
property owned by the taxpayer for the years 1992 and 1993.
See G. L. c. 58A, § 13. We conclude that the board erred by
disregarding relevant evidence of fair cash value without a
legally supportable justification. We therefore remand this mat-
ter to the board for a redetermination of the fair cash value of
the taxpayer's property.

The undisputed facts are as follows. The taxpayer, a part of
the Tenneco, Inc., conglomerate, owns and operates a pipeline
which transports gas from Louisiana and Texas to New England.

The pipeline runs through a 51.9 acre parcel of land in Agawam. This parcel contains a compressor station which compresses the gas as it travels through the pipeline. The land also contains several other improvements, including pipelines, offices, and warehouses. For fiscal years 1992 and 1993, the assessors valued the Agawam property at $1,968,600. The taxpayer paid the 1992 tax bill and then applied to the assessors for an abatement of the fiscal year 1992 tax. The application was denied. The taxpayer did not appeal timely to the board. The board allowed a late appeal. See G. L. c. 59, § 65C. On November 2, 1992, the taxpayer unsuccessfully applied for abatement for the fiscal year 1993 and timely appealed.

"[I]t is well established that decisions of the board must be supported by substantial evidence" in the record. *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 465 (1981), and cases cited. This standard, although hard to define, requires "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 466, quoting *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). "A finding of the board must be set aside if 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.' " *New Boston Garden Corp., supra*, quoting L.L. Jaffe, Judicial Control of Administrative Action 598 (1965). Looking at the record as a whole, "[t]he substantiality of evidence [required to support a finding] must take into account whatever in the record fairly detracts from its weight." *New Boston Garden Corp., supra*, quoting *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966).

Assessors must assess the taxpayer's property at its "fair cash value." G. L. c. 59, § 38. See *Boston Edison Co.* v. *Assessors of Watertown*, 387 Mass. 298, 301 (1982). The fair cash value is defined as "the price that an owner willing but not compelled to sell ought to receive from one willing but not compelled to buy." *Assessors of Quincy* v. *Boston Consol. Gas Co.*, 309 Mass. 60, 63 (1941). The taxpayer has the burden of proving overvaluation. See *Montaup Elec. Co.* v. *Assessors of Whitman*, 390 Mass. 847, 855 (1984) (*Montaup Elec.*); *Foxboro Assocs.* v. *Assessors of Foxborough*, 385 Mass. 679, 684 (1982). On appeal, the taxpayer must show an error of law by the board. *Montaup Elec., supra* at 849.

There are several methods for determining the fair cash value

of property, and "the board is not required to adopt any particular method of valuation." *Pepsi-Cola Bottling Co.* v. *Assessors of Boston*, 397 Mass. 447, 449 (1986). Generally we defer to the board's judgment in determining what valuation method to apply. See *Assessors of Watertown, supra* at 302. In valuing utility property, assessors may, for example, (1) examine the net book value, also known as the rate base value, defined as the original cost of the property at the time it was originally devoted to public use, less accrued depreciation; (2) look to comparable market sales; (3) refer to capitalized net earnings; or (4) look to the current replacement or reproduction cost of the property less depreciation (DRC). See *Montaup Elec., supra* at 850, and cases cited. Assessors also may use the unit principle to value property of a utility.[1] The goal of each method is to determine what a willing buyer would pay a willing seller for the property.

When assessing the value of property owned by a utility, the board must consider the impact of government regulations. See *Assessors of Watertown, supra* at 304. If a utility sells an asset to another regulated utility, that asset ordinarily retains the same basis for ratemaking purposes. In those circumstances, the return on the investment of the purchaser is limited to the net book value. If the taxpayer sold its Agawam property "to another public utility, that other utility would be allowed a return . . . based on that property's net book . . . value, and not on any higher purchase price it might have paid." See *id.* at 301. Absent evidence showing that a potential buyer would pay more than the net book value for utility-owned land, when, by investing elsewhere, the buyer could receive a greater return, the net book value is the proper valuation method. See *id.* at 304-305. See also *Montaup Elec., supra* at 850 (determining that reproduction or replacement cost of property less depreciation also may be probative of fair cash value).

Assessors may offer evidence of special circumstances demonstrating why a buyer might pay more than the net book

---

[1]The unit concept of valuation is based on the premise that each portion of the integrated unit contributes equally to the earning power of the unit itself. A portion of the value of the unit is then allocated to each piece of property. See *Tenneco, Inc.* v. *Commissioner of Revenue*, 9 Mass. App. Tax Bd. Rep. 140, 142 (1988).

value for property owned by a utility.[2] See, e.g., *Boston Edison Co.* v. *Assessors of Everett*, 20 Mass. App. Tax Bd. Rep. 77, 123-124, 128 (1996) (concluding that net book value is not an accurate refection of fair cash value where foreseeable changes in regulations might cause a buyer to pay more than net book value). The taxpayer need not show the absence of such special circumstances "until there is some evidence offered by the assessors to show that, because of such circumstances, the relevance of [net book value] is put in question." See *Montaup Elec.*, *supra* at 855.

Before the board, the taxpayer offered evidence of the fair value of the property. One of the taxpayer's witnesses testified that the Agawam real estate was subject to significant regulations regarding air emissions, hazardous waste, asbestos, water discharge, toxic substances, wetlands, and underground pipes and tanks. These regulations require the taxpayer to obtain government approval to remove improvements or renovate the property. The taxpayer offered evidence that, as of 1992, it would cost more than $6.6 million to remove the facilities located on the property. The taxpayer also submitted evidence concerning the Federal Energy Regulatory Commission's (FERC's) intensive government regulations which affect the value of the land. Because FERC controls the rates that the taxpayer may charge, and because those limits are carried over to any utility purchaser, the value of the property is limited.[3] Finally, another witness for the taxpayer, an expert in utility valuation and appraisals, said that the Agawam property's highest and best use was as a utility, noting that it would be financially impractical to make the property suitable for another use. The Agawam property was part of a network; it could not be valued without looking at the network. Using the unit

[2]Assessors may offer evidence that the return actually or potentially earned by a utility might be greater than the net book value, that the governing regulations which limit the income might be altered, that potential business growth might warrant paying more than net book value, or that a buyer that is not a public utility (and, therefore, not facing income limits) might purchase the property. The carryover base rate policy of the regulating body might change or the investment might present greater returns than other comparable investments. See, e.g., *Boston Edison Co.* v. *Assessors of Watertown*, 387 Mass. 298, 306 (1982). See also *Montaup Elec. Co.* v. *Assessors of Whitman*, 390 Mass. 847, 855 (1984).

[3]One of the taxpayer's experts opined that FERC would not allow the land to be abandoned.

principle, adopted by the board in *Tenneco, Inc.* v. *Commissioner of Revenue*, 9 Mass. App. .Tax Bd. Rep. 140, 147 (1988), that expert valued the Agawam property, including the real estate and all of its improvements, at $312,908 for fiscal year 1992 and $780,597 for fiscal year 1993.[4]

The assessors called two witnesses. Neither witness offered a method for valuing property of a utility nor acknowledged or testified to any special circumstance which might cause a buyer of the utility real estate to pay more than net book value. One witness testified that the Agawam property should be assessed as any other commercial property, ignoring the impact of all the regulations, including FERC's, and other encumbrances on the value of the land.[5] The expert also disregarded the cost of removing the pipeline and its supporting facilities in determining that a pipeline or compression facility could not be the property's highest and best use. The second witness said that he originally assessed the value of the property by relying on comparisons to sales of regular commercial property. He did not take into account the presence or possibility of pollution or other hazardous material, nor did he consider the regulatory limits on the use and transfer of the land or the physical encumbrances. Thus, the assessors' experts did not consider the factors relevant to the valuation of land owned by a utility and encumbered by government regulations. Neither expert testified that the regulations were likely to change so that the carryover basis would change or that there was a nonutility buyer likely to buy the property encumbered by regulations.

The board, in its findings, determined that the highest and best use of the land was as a natural gas compressor station, that the land was regulated by FERC, and that property income was tied to the net book value. The board determined that "it simply could not rely upon net book cost to value" the taxpayer's property, and it also refused to apply the unit method it adopted in its opinion in *Tenneco*. The board's opinion does not point to "(a) substantial evidence on this record or (b) a

---

[4]The difference was attributed to improvements made on the Agawam parcel.

[5]The witness also testified that the property could be sold to a nonutility, and the property could then produce income unrelated to its book value. Although the witness stated that the cost of removing the physical and regulatory encumbrances would not affect the purchase price, the witness was not qualified as an expert in the valuation of land owned by a utility.

reasonable basis in logic for ignoring almost entirely the fact that a potential buyer, if it were a public utility, would be considerably influenced by the return to which it would be limited on whatever investment it made." *Assessors of Watertown, supra* at 304.

In determining that net book value did not represent the fair market value, the board relied in part on the fact that the taxpayer sold a parcel of land "with some similarities" in 1993, located in Hopkinton, for twenty-five times its "historical cost." Therefore, the board analogized, the net book value of the Agawam property was not an accurate assessment of the fair cash value. By relying simply on the sale price of the Hopkinton property, the board, in its opinion, did not take into account the significant encumbrances on the Agawam land or the $6.6 million estimated cost of removal of the physical encumbrances. There was no evidence before the board that the Hopkinton land contained any portion of a pipeline or any supporting facilities. The Hopkinton land was not encumbered by regulations similar to those in Agawam.[6]

The board accepted the evidence that any purchaser who sought to use the Agawam property as a utility would be bound by the FERC regulations, which tie income to net book value. However, the board did not consider the impact of the FERC regulations on the fair market value. Rather, the board noted that the taxpayer had recently spent approximately $1,000,000 to build a new compressor and control center on the property. Additionally, other older buildings still sat on the property, presumably of some value. According to the board, therefore, the taxpayer would be unlikely to sell the property for its net book value.

The board also rejected the unit method of valuation. In *Tenneco*, the board determined the unit method to be an effective measure of personal property owned by a public utility, stating, "a mile of pipeline in Massachusetts is no more valuable than an equivalent mile of pipeline in any other state; each part of the whole is interdependent." *Tenneco, supra* at 151. Here, however, the board rejected the unit approach in valuing real

[6]The board also relied on a contract to sell a portion of the Agawam property to a potato farmer who had leased the property for the past twenty years. Like the Hopkinton property, the sale price of this property is not relevant to the assessment of the encumbered property because the potato field was not similarly encumbered.

property. The board concluded that the unit rule methodology employed by the taxpayer was flawed because it considered more than just real estate in valuing the unit and because "it produced results which were speculative and too unreliable to form the basis of an opinion on value." Although the same logic the board applied to valuing the pipeline in *Tenneco* applies to the tracts of land under and above which the pipeline flows, the board did not state any reason why the two should be valued differently. The board erred by disregarding the taxpayer's evidence of overvaluation in the absence of any of the "special circumstances" enumerated in *Assessors of Watertown* and *Montaup Elec.* and by rejecting any consideration of the encumbrances on the land.

The taxpayer put forth sufficient evidence of overvaluation while the assessors produced no evidence of "special circumstances" that a willing buyer would pay more than net book value for land used by a utility and encumbered by regulations. "The board 'nowhere explains, by reference to substantial evidence or to reasoned principle, why a buyer would want to pay more than [the assessors'] net book value.' " *Montaup Elec.*, *supra* at 855, quoting *Assessors of Watertown, supra* at 304-305. Although the board determined that the highest and best use of the property was its present use as a utility, the board concluded that both the net book value and the unit principle were inappropriate measures of value. The assessors did not offer any method of valuation consistent with the encumbrances on the taxpayer's land. The board did not offer any justifiable reason for disregarding the taxpayer's evidence and accepting valuation of the land as if it were unencumbered by regulations. "[E]vidence of a party having the burden of proof may not be disbelieved without an explicit and objectively adequate reason." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 470-471 (1981), quoting L.L. Jaffe, Judicial Control of Administrative Action 607 (1965).

The decision of the board is vacated and the case is remanded to the board for a redetermination of the fair cash value.

*So ordered.*