NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11807

GEORGE SCHUSSEL & another[1] vs.  COMMISSIONER OF REVENUE.


Suffolk.     March 3, 2015. - July 1, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Taxation, Appellate Tax Board:  findings, Income tax, Gross
income, Income tax returns.  Words, "Tax-related."



Appeal from a decision of the Appellate Tax Board.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Francis J. DiMento for the taxpayers.
John M. Stephan, Assistant Attorney General, for
Commissioner of Revenue.


LENK, J.  Since the 1970s, George and Sandra Schussel[2] have

owned property and business interests in Massachusetts, and have

had other close ties to the Commonwealth.  The Schussels, who

_____

[1] Sandra Schussel.

[2] Because they share a last name, we refer to George and
Sandra Schussel by their first names.

are married, filed no Massachusetts tax returns between 1989 and 2007.  In 2007, George was convicted of Federal conspiracy and tax evasion charges in the United States District Court for the District of Massachusetts.  The Commissioner of Revenue (commissioner) then issued the Schussels a notice of failure to file Massachusetts income tax returns for the years 1993, 1994, and 1995.  When the Schussels subsequently filed tax returns for those years, the returns were determined by the commissioner to be "false or fraudulent," or to have been filed "with a willful attempt . . . to defeat or evade the tax."  See G. L. c. 62C, § 28.  Accordingly, the commissioner imposed a "double assessment" against the Schussels.  The Schussels submitted a request for abatement of the double assessment, which the commissioner denied.

The commissioner's decisions were upheld by the Appellate Tax Board (board), and the Appeals Court affirmed.  See Schussel v. Commissioner of Revenue, 86 Mass. App. Ct. 419, 431 (2014).  We allowed the Schussels' petition for further appellate review.  Before us, the Schussels claim two errors.  First, they contend that they were not properly subject to a double assessment.  They note, in this context, that their tax returns were prepared for them by an attorney, and that they attached a "rider" to those returns, stating that the sums reported were the subject of Federal criminal proceedings against George.  The Schussels'

second claim is that they were entitled to relief from the double assessment under an amnesty program established by the commissioner in 2009, pursuant to St. 2008, c. 461 (2009 amnesty program). Although the 2009 amnesty program does not apply to "any taxpayer who . . . was the subject of a tax-related criminal investigation or prosecution," St. 2008, c. 461, § 1, the Schussels argue that this exception refers only to investigations or prosecutions arising from State, not Federal, tax offenses.

We affirm, concluding that the board's findings of fact are supported by substantial evidence and that the Schussels' claim that the 2009 amnesty program applies to them is not properly before us.

1. Background. We summarize the facts essential to our analysis, as found by the board, reserving disputed issues for later discussion.

The Schussels settled in Lynnfield in 1971, purchasing a home there. They subsequently acquired several additional Massachusetts properties. In 1979, George founded a Massachusetts corporation named Digital Consulting, Inc. (DCI), which he then ran with Sandra's assistance. At around the same time, the Schussels bought a residence in New Hampshire. They retained family ties and social relationships in Massachusetts, remained heavily involved with DCI, renewed their Massachusetts

driver's licenses, and registered the vehicles they used most frequently in Massachusetts. From 1989 through 2007, the Schussels did not file Massachusetts tax returns, either as residents or as nonresidents.

In 2004, George was indicted in the United States District Court for the District of Massachusetts on one count of conspiracy and two counts of tax evasion. The conspiracy charge concerned the years 1988 to 1998. One of the tax evasion charges was based on George's Federal tax return for 1995.[3] In January, 2007, a jury returned guilty verdicts on all three counts. George appealed, and the conviction was affirmed. See United States v. Schussel, 291 Fed. Appx. 336 (1st Cir. 2008).

In May, 2007, the commissioner issued the Schussels a notice of failure to file Massachusetts income tax returns for the years 1993, 1994, and 1995. The Schussels subsequently filed returns for those years. In those returns, they classified themselves as nonresidents, and reported income amounts that, at least for the year 1995, were identical to the amounts deemed false in George's Federal criminal case. The commissioner assessed the amounts of tax due based on the Schussels' returns, and the Schussels paid the assessed amounts.

---

[3] The other count of tax evasion concerned the tax return of Digital Consulting, Inc., for the same year.

In August, 2007, relying on information that emerged in George's prosecution, the commissioner assessed additional taxes against the Schussels. The additional assessment increased the amount of revenue attributed to the Schussels, classified the Schussels as Massachusetts residents, and imposed a "double assessment" pursuant to G. L. c. 62C, § 28.[4]

In February, 2009, the commissioner issued a tax amnesty notice to the Schussels.[5] The notice stated that the commissioner would waive certain penalties and interest -- not including the double assessment -- if the Schussels paid the full amount due from them by the end of April, 2009. The Schussels paid the balance demanded in the tax amnesty notice and received the benefit described in it.

The Schussels submitted to the commissioner a request for abatement of all of the additional taxes that had been imposed on them in August, 2007. The commissioner denied the request. The Schussels appealed to the board, arguing primarily that,

---

[4] Before the Appellate Tax Board (board) and the Appeals Court, the Schussels argued that the authority of the Commissioner of Revenue (commissioner) to impose an additional assessment on them was limited to a seven-year "look-back" period by force of a written policy issued by the commissioner. They do not pursue this argument before us.

[5] The commissioner asserts that this notice was issued inadvertently, and the board so found. As nothing of substance turns on this finding, we do not take up the Schussels' challenge to it.

during the tax years in question (1993 through 1995), they had not been residents of Massachusetts. The board upheld the commissioner's additional assessment, finding that the Schussels were Massachusetts residents during the relevant years, that they filed false tax returns "knowingly" and with an "intent to evade taxes," and that they were not entitled to relief under the 2009 amnesty program.

The Appeals Court affirmed, and we allowed the Schussels' petition for further appellate review. In their appellate proceedings, the Schussels have abandoned the claim that they were nonresidents during the tax years at issue.

2. Standard of review. Appellate review of a decision of the board is limited in scope. By legislative mandate, "[t]he decision of the board shall be final as to findings of fact." G. L. c. 58A, § 13. Nevertheless, a decision of the board, like that of any administrative agency, see G. L. c. 30A, § 14 (7) (e), may be challenged on the ground that it is not supported by "substantial evidence." See Capital One Bank v. Commissioner of Revenue, 453 Mass. 1, 8, cert. denied, 557 U.S. 919 (2009), quoting Boston Professional Hockey Ass'n, Inc. v. Commissioner of Revenue, 443 Mass. 276, 285 (2005). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Boston Gas Co. v. Assessors of Boston, 458 Mass. 715, 721 (2011), quoting

Tennessee Gas Pipeline Co. v. Assessors of Agawam, 428 Mass. 261, 262 (1998). See G. L. c. 30A, § 1 (6). Otherwise put, a conclusion lacks a substantial evidentiary basis if "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." Boston Gas Co. v. Assessors of Boston, supra at 721-722, quoting Tennessee Gas Pipeline Co. v. Assessors of Agawam, supra.[6]

We conduct an independent analysis of the board's rulings of law, according "some deference" to the board's "expertise in interpreting the tax laws of the Commonwealth." See Capital One Bank v. Commissioner of Revenue, supra; McCarthy v. Commissioner of Revenue, 391 Mass. 630, 632 (1984), quoting French v. Assessors of Boston, 383 Mass. 481, 482 (1981). "[W]e are precluded," however, "from 'consider[ing] any issue of law which does not appear to have been raised in the proceedings before the board.'" Commissioner of Revenue v. New England Power Co., 411 Mass. 418, 425 (1991), citing G. L. c. 58A, § 13.

---

[6] We have stated on occasion that the board's findings of fact will stand if they are supported by "sufficient" evidence. See, e.g., Boston Professional Hockey Ass'n, Inc. v. Commissioner of Revenue, 443 Mass. 276, 285 (2005); General Mills, Inc. v. Commissioner of Revenue, 440 Mass. 154, 161 (2003), cert. denied, 541 U.S. 973 (2004), quoting Olympia & York State St. Co. v. Assessors of Boston, 428 Mass. 236, 240 (1998). In this context, "substantial evidence," as defined by G. L. c. 30A, § 1 (6), is sufficient to support the board's findings.

3.  Imposition of double assessment.  General Laws c. 62C, § 28, authorizes the commissioner to impose an assessment of "not more than double" the amount of tax he or she determines to be due in three situations:  (a) where a person, after being notified of deficiencies in his or her tax return, "refuses or neglects within thirty days . . . to file a proper return"; (b) where a person "has filed a false or fraudulent return"; or (c) where a person "has filed a return with a willful attempt in any manner to defeat or evade the tax."

There is now no dispute that the Schussels' Massachusetts tax returns for the years from 1993 to 1995, filed in response to the commissioner's May, 2007, notice of failure to file, were incorrect in at least two ways.  First, the returns classified the Schussels as nonresidents when they were, in fact, residents.  Second, the amounts of income reported in the returns were lower than the amounts that the Schussels actually earned.  For instance, in their 1995 tax return, the Schussels reported their total income as $1,057,361.  This was essentially the same amount of income reported to the Internal Revenue Service (IRS) for that year.  That report culminated in George's conviction of Federal tax evasion.  The IRS since has determined

that the Schussels' true income for 1995 was $3,341,868. The Schussels do not contest that determination.[7]

Not every inaccurate tax return represents a "false or fraudulent return" within the meaning of G. L. c. 62C, § 28. As the board has said, "[f]raud cannot be shown by mere proof that a party made an error of fact. Rather, the [commissioner] must demonstrate 'an actual intent to deceive.'" Food Serv. Assocs., Inc. v. Commissioner of Revenue, 26 Mass. App. Tax Bd. Rep. 438, 444 (2001), quoting Metropolitan Life Ins. Co. v. Burno, 309 Mass. 7, 10 (1941), overruled on other grounds by Pahigian v. Manufacturers' Life Ins. Co., 349 Mass. 78, 87 (1965). Likewise, a "willful attempt to defeat or evade [taxation]," in the board's words, "does not include negligence, carelessness, misunderstanding or unintentional understatement of income." Scagel v. Commissioner of Revenue, 13 Mass. App. Tax Bd. Rep. 38, 48 (1990), quoting United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956). Thus, a double assessment penalty may be

---

[7] The Schussels contend that the amounts of income that they earned in the relevant years were not "finally determined" when they filed their Massachusetts returns. This argument appears to be premised on the fact that the Internal Revenue Service (IRS) adjusted its assessment of the Schussels' income in January, 2009. But by the time the commissioner imposed a double assessment on the Schussels, the Federal government already had determined that the Schussels had substantially underreported their income. Moreover, the IRS corrected its assessment quickly enough that the new figures were submitted to the board and considered in its decision.

imposed under G. L. c. 62C, § 28, only on taxpayers whose conduct was knowing and intentional; negligence or carelessness do not suffice.

The board found that the Schussels' filing of false returns was "knowing," and that they made their filings with an "intent to evade taxes."[8]  The board based these findings on essentially the following factors.  First, from 1989 through 2007, the Schussels did not merely fail to classify themselves in their returns as Massachusetts residents; rather, they did not file any Massachusetts returns, either as residents or as nonresidents, despite their substantial Massachusetts property and business interests.  Second, during the same period, the Schussels also abstained from filing any tax returns in New Hampshire (as to income from interest or dividends; New Hampshire does not have a general income tax).  Third, the amounts of income stated in the Schussels' tax returns were the same sums that, by that time, had resulted in George's conviction of tax evasion in Federal court.  The board also stated repeatedly that, having heard the testimony of the Schussels, the board did not find that testimony credible.

---

[8] The board wrote also that the Schussels exhibited, "at a minimum, reckless indifference to the obligation to file accurate taxes."  The board's decision as a whole leaves no doubt that, notwithstanding this delicate phraseology, the board found the Schussels' actions to have been knowing and intentional, not merely reckless or indifferent.

The Schussels present two main arguments against the
board's finding that their false returns were filed knowingly
and intentionally.[9]  Neither argument persuades us that the
board's determinations were based on an error of law, or that
its findings are not supported by substantial evidence.  See
Capital One Bank v. Commissioner of Revenue, 453 Mass. at 8,
quoting Boston Professional Hockey Ass'n, Inc. v. Commissioner
of Revenue, 443 Mass. at 285.

First, the Schussels point to a "rider" attached to each of
their three Massachusetts tax returns.  Each rider stated as
follows:

> "Taxpayer is currently a party to a criminal tax case
> brought by the U.S. Attorney's office . . . . Items of
> gross income determined pur[su]ant to said case are the
> subject of a pending appeal regarding amount,
> characterization and source.  Income which is the subject
> of said case/appeal has not been reported on this return
> due to the uncertain[]ties described above."

The Schussels contend that this rider undermines the board's
conclusion that they knowingly and intentionally filed false

_____

[9] The Schussels also argue that it was not necessarily
fraudulent for them to have reused, in their Massachusetts tax
returns, the income figures that the IRS and the United States
District Court jury had found to be false.  They suggest, in
essence, that the unreported income absent from their Federal
returns might not have been taxable in Massachusetts in any
event.  We need not dwell on this argument, which was not made
below, is not supported by record evidence, and, even if
correct, would not alter our conclusion that the board's
findings were grounded in substantial evidence.

returns.  This argument lacks merit, as the rider itself was misleading.

George's Federal appeal arose from his conviction of criminal offenses.  The issues presented in the appeal were "(1) whether documents turned over to the government from [George's] attorney's files violate[d] the attorney-client privilege; (2) whether the refusal of the trial court to give certain requested jury instructions violated [George's] right to a fair trial; and (3) whether sufficient evidence support[ed] [George's] conviction for conspiracy." United States v. Schussel, 291 Fed. Appx. 336, 337 (1st Cir. 2008).  The appeal thus did not contend that the figures reported by the Schussels to the IRS represented their true levels of income.  Nor was it possible that an appeal from George's criminal conviction, given its procedural posture, would culminate in an adjustment of the Schussels' tax liability.  In short, the pendency of George's criminal appeal provided no good faith basis for the Schussels to continue to report their income, in their Massachusetts tax returns, using the false figures originally reported to the IRS.  Their suggestion to the contrary, set forth in their rider, was itself a misrepresentation.

Next, the Schussels note that their tax returns were prepared by a tax attorney.  This fact, the Schussels argue, "cuts against" a finding that they acted knowingly and

intentionally in filing the false returns. We recognize, as the board previously has, that a taxpayer ordinarily should not be determined to have filed false returns knowingly and intentionally if he or she disclosed the relevant facts to an accountant or an attorney, and relied in good faith on the advice of that accountant or attorney. See Scagel v. Commissioner of Revenue, 13 Mass. App. Tax Bd. Rep. at 48. See also United States v. Boyle, 469 U.S. 241, 251 (1985) ("When an accountant or attorney advises a taxpayer on a matter of tax law . . . it is reasonable for the taxpayer to rely on that advice"); McMurray v. Commissioner of Internal Revenue, 985 F.2d 36, 43 (1st Cir. 1993) ("Reasonable reliance on expert opinion, asserted in good faith, can shield a taxpayer" from penalties for failure to pay tax).

In the present case, however, the record contains no indication that the Schussels provided their attorney with such a full and accurate disclosure of relevant information concerning either their ties to Massachusetts or their actual income. In these circumstances, the fact that the tax returns were prepared by an attorney has little, if any, significance for the question whether the Schussels filed their false returns knowingly and intentionally. Cf. Smaland Beach Ass'n, Inc. v. Genova, 461 Mass. 214, 222 (2012), citing G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 275 (1991) (advice-of-

counsel defense to suit requires "a showing that the clients made a full and honest disclosure of material facts to the attorney and that they followed the attorney's advice"); Commonwealth v. Ballou, 283 Mass. 304, 314 (1933) (approving of jury instructions, in trial for fraud and corrupt conduct, stating that, "the fact that the defendants consulted counsel would have a bearing on their good faith, but they must show that they made a full and frank disclosure to those whose advice they sought").

The short of the matter is that the factors identified by the board, as described supra, coupled with the board's assessment of the Schussels' credibility, amounted to "such evidence as a reasonable mind might accept as adequate" to support the determination that the Schussels knowingly and intentionally filed false tax returns. See Boston Gas Co. v. Assessors of Boston, 458 Mass. 715, 721 (2011), quoting Tennessee Gas Pipeline Co. v. Assessors of Agawam, 428 Mass. 261, 262 (1998).

4. Amnesty program. In St. 2008, c. 461, the Legislature instructed the commissioner to establish a two-month tax amnesty program. The program described by the Legislature was to grant taxpayers relief from penalties for unfiled returns, improper returns, and failures to make full and timely tax payments. See St. 2008, c. 461, § 1. Taxpayers would gain the privilege of

amnesty by filing proper returns, making proper payments, and "otherwise com[ing] into compliance with the tax laws of the [C]ommonwealth" by a deadline to be established by the commissioner. See id. The Legislature stated, however, that "[t]he commissioner's authority to waive penalties . . . shall not apply to any taxpayer who, before the start date of the amnesty program . . . was the subject of a tax-related criminal investigation or prosecution." Id.

The commissioner complied, administering the 2009 amnesty program during March and April of that year. See Technical Information Release 09-3 (Feb. 19, 2009), 5 Official MassTax Guide, at PWS-260 (Thomson Reuters 2015). As directed, the commissioner announced that amnesty would not be granted to "any taxpayer who, prior to March 1, 2009, was the subject of a tax-related criminal investigation or prosecution." Id. part III.A.2, at PWS-261.

The 2009 amnesty program resulted, as mentioned, in the Schussels being relieved of certain penalties, but not of the double assessment imposed on them. The Schussels claim that they were entitled to amnesty from that penalty as well. They argue, to this end, that a criminal investigation or prosecution excludes a taxpayer from the 2009 amnesty program only if it concerns "Massachusetts taxes imposed pursuant to Massachusetts statutes."

Because this argument "does not appear to have been raised in the proceedings before the board," it is not properly before us. See G. L. c. 58A, § 13. We note, nevertheless, that it would not affect the outcome. Assuming, without deciding, that the term "tax" in the context of the 2009 amnesty program refers to Massachusetts taxes only, a Federal prosecution for underreporting Federal income taxes would nevertheless be "tax-related," given that income tax liability in Massachusetts is calculated on the basis of Federal tax liability. See G. L. c. 62, §§ 2, 6F.

<u>Decision of the Appellate
Tax Board affirmed</u>.