PELLEVERDE CAPITAL, LLC vs. BOARD OF ASSESSORS OF WEST BRIDGEWATER, 101 Mass. App. Ct. 739

 
 PELLEVERDE CAPITAL, LLC vs. BOARD OF ASSESSORS OF WEST BRIDGEWATER (and two consolidated cases [Note 1]).

101 Mass. App. Ct. 739
 January 13, 2022 - September 21, 2022

Court Below: Appellate Tax Board
Present: Rubin, Wolohojian, Blake, JJ.

 

No. 21-P-424.

Taxation, Personal property tax: abatement, Exemption. Municipal Corporations, Property. Statute, Construction.

The Appellate Tax Board did not err in concluding that municipal properties supplied with power from the taxpayer's solar photovoltaic facility were not subject to taxation under G. L. c. 59 and, therefore, that the taxpayer was not exempt from personal property taxation under G. L. c. 59, § 5, Forty-fifth, where, at the time of the enactment of the exemption, the Legislature understood and intended that municipal property held for a public use was not property taxable under G. L. c. 59. [741-744]

Appeal from a decision of the Appellate Tax Board.

 Raipher D. Pellegrino (Samuel R. Prickett also present) for the taxpayer.

 Thomas P. Gay, Jr., for board of assessors of West Bridgewater.

 WOLOHOJIAN, J. In fiscal years 2015, 2016, and 2017 (tax years), PelleVerde Capital, LLC (PelleVerde) owned a solar photovoltaic facility (solar power facility) whose output went only to municipal properties used for public purposes in the town of West Bridgewater. During these tax years, [Note 2] the Legislature exempted from taxation "[a]ny solar or wind powered system or device which is being utilized as a primary or auxiliary power system for the purpose of heating or otherwise supplying the energy needs of property taxable under this chapter" (emphasis added). G. L. c. 59, § 5, Forty-fifth, as amended by St. 1978, c. 388 (solar exemption). PelleVerde sought personal property tax abatements for each of the three tax years, all of which were denied by the board of assessors of West Bridgewater (assessors). PelleVerde 

 Page 740 

then appealed to the Appellate Tax Board (board), arguing that it was entitled to the solar exemption. The board affirmed the decisions of the assessors, concluding that the municipal properties supplied by PelleVerde's solar facility were not subject to taxation under G. L. c. 59 and, therefore, PelleVerde was not entitled to the solar exemption. [Note 3]

 Although we acknowledge that the statutory scheme produced a counterintuitive disincentive for solar power facilities to provide their output to municipal properties, we nonetheless affirm the board's decision. The Supreme Judicial Court has repeatedly held that municipal property used for a public purpose is exempt from taxation under c. 59; therefore, PelleVerde did not supply its output to "property taxable under [c. 59]," as required to obtain the solar exemption.

 Background. [Note 4] During the three tax years at issue, PelleVerde owned a 1,868.24-kilowatt solar power facility located in West Bridgewater (town). Under a contract entered into with the town in 2011, PelleVerde sold all of the solar power facility's electricity or net metering credits to the town, [Note 5] which elected to allocate them to eight municipal properties, [Note 6] all of which were used for public purposes. [Note 7] The town did not assess real estate taxes on any of these municipally owned properties during the three tax years, 

 Page 741 

and the assessors found that the properties were tax exempt.

 Discussion. At issue is whether PelleVerde was entitled to an abatement of the personal property tax on its solar power facility under the solar exemption, which (as we have noted above), at the times relevant to this appeal, exempted from taxation "[a]ny solar or wind powered system or device which is being utilized as a primary or auxiliary power system for the purpose of heating or otherwise supplying the energy needs of property taxable under this chapter," that is, under G. L. c. 59. G. L. c. 59, § 5, Forty-fifth, as amended by St. 1978, c. 388. The board construed the solar exemption to require PelleVerde to prove three things: (1) that PelleVerde's facility was a solar or wind powered system or device, (2) that it was utilized as a primary or auxiliary power system for the purpose of supplying energy, and (3) that it was utilized to supply the energy needs of property that was "subject to Massachusetts property tax." PelleVerde raises no quarrel with respect to the board's view of the first two of these requirements, which the board resolved favorably to PelleVerde. Instead, PelleVerde challenges in two respects the board's view of the third requirement. First, PelleVerde argues that the board did not hew to the statutory language, and instead impermissibly substituted the phrase "subject to Massachusetts property tax" for the actual statutory language "property taxable under [c. 59]." Second, PelleVerde contends that the municipal properties to which it supplied its solar facility's output were "property taxable under [c. 59]." [Note 8] 

 We turn to this second argument first. [Note 9] In doing so, we keep in mind that "[a]ppellate review of a decision of the board is limited in scope." Schussel v. Commissioner of Revenue, 472 Mass. 83, 86 (2015). "[W]e will not modify or reverse a decision of the board if the decision is based on both substantial evidence and a correct application of the law." Rauseo v. Assessors of Boston, 94 Mass. App. Ct. 517, 519 (2018), quoting Boston Professional Hockey Ass'n, Inc., v. Commissioner of Revenue, 443 Mass. 276, 285 (2005). "We conduct an independent analysis of the board's 

 Page 742 

rulings of law, according 'some deference' to the board's 'expertise in interpreting the tax laws of the Commonwealth.'" Schussel, supra at 87, quoting Capital One Bank v. Commissioner of Revenue, 453 Mass. 1, 8, cert. denied, 557 U.S. 919 (2009).

 The question before us is what is "taxable under [c. 59]." PelleVerde argues that municipal property is "taxable under" the chapter because the provision that provides taxing authority, G. L. c. 59, § 2, states: "All property, real and personal, situated within the commonwealth, and all personal property of the inhabitants of the commonwealth wherever situated, unless expressly exempt, shall be subject to taxation." There is no express exemption for municipal property, and so, PelleVerde argues, municipal property is taxable under c. 59.

 This argument has some force, but the Supreme Judicial Court has long held that, despite the absence of an express exemption, municipal property "is not subject to taxation so long as it is actually devoted to a public use." Boylston Water Dist. v. Tahanto Regional Sch. Dist., 353 Mass. 81, 82 (1967), quoting Collector of Taxes of Milton v. Boston, 278 Mass. 274, 277 (1932). This is not a statutorily express exemption, see Assessors of Quincy v. Cunningham Found., 305 Mass. 411, 417 (1940), but rather "a judicially recognized exception to G. L. c. 59, § 2," Tax Collector of N. Reading v. Reading, 366 Mass. 438, 442 (1974), that applies both to property "held for a public use by one municipality within the territorial limits of another, or within its own boundaries," Cunningham Found., supra. This municipal property exemption "rests upon general principles of propriety, justice, and expediency," and "long has been made for the reason that property held and used for the public benefit should not be burdened with paying public expenses" (citation omitted). Gas & Elec. Comm'rs of Middleborough v. Assessors of Lakeville, 355 Mass. 387, 389 (1969).

 The question, then, is whether the Legislature, in referring to property "taxable under [c. 59]" meant all property made subject to taxation by the text of G. L. c. 59, § 2, and not exempted by statute, or instead meant only property that could actually be taxed under G. L. c. 59, § 2, as it has been construed by the Supreme Judicial Court. Given that the judicially imposed rule excepting municipal property from taxation under G. L. c. 59, § 2, had been in place for more than one hundred years at the time 

 Page 743 

of the enactment of the solar exemption, [Note 10] so that in common parlance municipal property was not thought of as "taxable under [c. 59]," we think the language of the statute is best read to mean the latter, and that municipal property held for a public use is not within the class of property "taxable under [c. 59]" as that phrase is used in G. L. c. 59, § 5, Forty-fifth. See Westinghouse Broadcasting Co. v. Commissioner of Revenue, 382 Mass. 354, 357, appeal dismissed, 452 U.S. 933 (1981), quoting First Data Corp. v. State Tax Comm'n, 371 Mass. 444, 447 (1976) (where tax statute does not define particular phrase, "we have said that the Legislature should be supposed to have adopted the common meaning of the [phrase], as assisted by a consideration of the historical origins of the enactment"). See also Seideman v. Newton, 452 Mass. 472, 477 (2008) ("Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense"); Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977) (we derive "usual and accepted" meaning of words used in statute "from sources presumably known to the statute's enactors, such as [the words'] use in other legal contexts and dictionary definitions"). Cf. Assessors of Boston v. Boston Elevated Ry., 320 Mass. 588, 594 (1947) (implied exemption recognized by Supreme Judicial Court "must have been known to the Legislature, and it must be assumed that the Legislature . . . was content to have the application of [G. L. c. 59, § 2,] limited as it was by" court's decisions).

 For these reasons, we conclude that when the Legislature enacted the solar exemption, it understood and intended that municipal property held for a public use was not "property taxable under [c. 59]." Accordingly, because PelleVerde's solar facility's output went only to tax-exempt properties, we affirm the decision of the 

 Page 744 

board. In doing so, however, we note two further points. First, we recognize that the result we reach here undercuts what we perceive to be an underlying purpose of the solar exemption, namely, to create an incentive to produce wind and solar energy. Not extending that incentive to wind and solar energy producers that supply municipal properties is likely to make it either harder, more expensive, or both, for municipalities to get solar and wind power suppliers to deal with them. But, second, we note that the Legislature recently enacted a comprehensive amendment of the solar exemption, St. 2021, c. 8, § 61 (effective June 24, 2021), and eliminated the language upon which our decision here turns. [Note 11]

 Decision of the Appellate Tax Board affirmed.

FOOTNOTES
[Note 1] The consolidated cases involve the same parties. 

[Note 2] As we discuss later, this clause was substantially amended by St. 2021, c. 8, § 61 (effective June 24, 2021). 

[Note 3] PelleVerde separately sought personal property tax abatements in fiscal years 2015, 2016, and 2017; the assessors denied each application, and PelleVerde timely appealed from each denial. The board consolidated the appeals and, following a hearing, rendered a decision in favor of the assessors for all three fiscal years. This appeal is from the board's consolidated decision and, accordingly, all three abatement applications are before us. That said, all three turn on the same legal issue. 

[Note 4] Our recitation of the facts is drawn from the board's findings. See G. L. c. 58A, § 13 ("The decision of the board [is] final as to findings of fact"). 

[Note 5] The output of the facility may be described as units of electricity or net metering credits. A net metering credit is a credit from a power utility for the electricity, in kilowatt hours, generated by a net metering facility, such as the solar power facility at issue here, and fed back to the power utility. See G. L. c. 164, § 138. 

[Note 6] The town allocated the net metering credits to eight of its municipal properties as follows: thirty-eight percent to the middle-senior high school, twenty-three percent to the highway department, nineteen percent to the water department, nine percent to the police department, four percent to the town hall, three percent to the library, two percent to the sanitary department, and two percent to the council on aging. 

[Note 7] The board found that each of the eight properties benefited by the net metering credits had been put to a public use, and PelleVerde did not present any evidence to dispute this finding. 

[Note 8] Before the board, PelleVerde also argued that, even if it was not entitled to an exemption under G. L. c. 59, § 5, Forty-fifth, the assessors had erred by overvaluing the solar power facility in the tax years at issue. The board found that PelleVerde had not established overvaluation, and PelleVerde does not contest that determination in this appeal. 

[Note 9] Our resolution of PelleVerde's second argument obviates the need to address PelleVerde's first one. 

[Note 10] This has been the rule in Massachusetts since, at the latest, 1842. Worcester v. Western R.R., 4 Met. 564, 567 (1842) ("public works," such as "bridges, turnpikes, and highways, and their incidents," and "public buildings and structures of a like kind; as state houses, forts and arsenals, court houses, jails, churches, town houses, school houses; and [other] houses appropriated specially to public uses" are "exempted from taxation"). See Tax Collector of N. Reading, 366 Mass. at 441-442; Gas & Elec. Comm'rs of Middleborough, 355 Mass. at 389; Boylston Water Dist., 353 Mass. at 82-83; Assessors of Boston v. Boston Elevated Ry., 320 Mass. 588, 594 (1947); Cunningham Found., 305 Mass. at 417; Collector of Taxes of Milton, 278 Mass. at 277; Burr v. Boston, 208 Mass. 537, 540 (1911); Essex County v. Salem, 153 Mass. 141, 142 (1891). 

[Note 11] "An owned or leased solar powered system, wind powered system or a solar or wind powered system that is co-located with an energy storage system, as defined in [G. L. c. 164, § 1,] that is: (i) capable of producing not more than 125 per cent of the annual electricity needs of the real property upon which it is located; provided, however, that the real property shall include both contiguous or non-contiguous real property within the same municipality in which there is a common ownership interest; (ii) a solar or wind powered system or a solar or wind powered system that is co-located with energy storage that is equal to or less than [twenty-five] kilowatts or less in capacity, provided that the capacity of the system is verified by department of energy resources incentive program documentation or electric distribution company permission to operate documentation; or (iii) a solar or wind powered system or energy storage system, or a combination therein, that has entered into an agreement for payment in lieu of taxes associated with the system with the municipality where the system is located [shall be exempt from property taxation]. The exemption under this clause shall be allowed for a period of [twenty] years; provided, however, that upon a written agreement between the owner of the solar or wind powered system and the municipality where the system is located, an exemption with a period greater than [twenty] years may be allowed." G. L. c. 59, § 5, Forty-fifth, as appearing in St. 2021, c. 8, § 61. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.